Joseph R. FONTANETTA, M. D.,
Plaintiff-Appellant,

v.

AMERICAN BOARD OF INTERNAL
MEDICINE, a non-profit corpora-
tion, Defendant-Appellee.

No. 448, Docket 34157.

United States Court of Appeals,
Second Circuit.

Argued Jan. 13, 1970.

Decided Feb. 6, 1970.

Harry Grossman, New York City (Grossman, Feigen & Rossetti, Joel D. Katims, New York City, on the brief), for plaintiff-appellant.

Roger Bryant Hunting, New York City (Greenbaum, Wolff & Ernst, Daniel G. Bergstein, New York City, on the brief), for defendant-appellee.

Before KAUFMAN and FEINBERG, Circuit Judges, and LEVET, District Judge.*

FEINBERG, Circuit Judge:

Dr. Joseph R. Fontanetta appeals from dismissal of his complaint by the United States District Court for the Eastern District of New York, Orrin G. Judd, J., for lack of jurisdiction over defendant American Board of Internal Medicine, 303 F.Supp. 427. The contention on appeal is that there was jurisdiction over the Board under N.Y.CPLR § 302(a) (1), part of New York's "long-arm" statute. We affirm the judgment of the district court.

Plaintiff is a resident of New York where he is licensed to practice medicine. Defendant, an Iowa non-profit corporation with its principal place of business in Philadelphia, Pennsylvania,[1] engages in examining doctors who wish to be certified as specialists in internal medicine. A doctor seeking certification writes to defendant Board in Philadelphia; the Board requires a written resume of his education and experience. If the Board is satisfied with these qualifications, it sends the doctor an application for its examination. This is filled out and returned to Philadelphia. Thereafter, the Board advises the doctor of the time and place of a written examination, which apparently occurs simultaneously once each year in a number of cities. The doctor selects the one most convenient to him. The completed written examination is forwarded for grading and marking to the Board in Phila-

delphia; the doctor is then notified of the result. If he has passed, the doctor must still take an oral examination, customarily given individually at a hospital convenient for the two examining physicians.

It is the latter examination that occasioned this law suit. Starting in 1960, plaintiff has been striving to obtain certification. According to the record, he took the written examination in New York City in four successive years from 1960 to 1963, and passed on the fourth attempt.[2] But success in the oral has thus far eluded him. Plaintiff took the oral examination in 1965 in Philadelphia and in 1967 in St. Louis, Missouri, but failed each time.

In the spring of 1969, plaintiff brought suit against defendant in the Supreme Court of the State of New York, County of Kings. The relief sought was essentially equitable; the complaint prayed for an order which would compel the Board to disclose the reasons why plaintiff failed the oral examinations and require it to certify plaintiff as a consultant in internal medicine.[3] Service of the summons and complaint upon the Board was made in Philadelphia. The Board removed the suit to the federal district court and thereafter moved to dismiss on the ground that the court had no jurisdiction over it.

Before Judge Judd, the principal question was whether there was jurisdiction over the Board under CPLR § 302(a) (1), which provides:

(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, * * * who in person or through an agent:

1. transacts any business within the state * * *.

---

* Of the Southern District of New York, sitting by designation.

1. Prior to 1965, defendant's principal place of business was in Madison, Wisconsin.

2. According to plaintiff, the written examination took six and one-half hours.

3. The complaint also sought $50,000 damages.

The Board argued in the district court that the section does not cover non-commercial transactions and that, in any event, plaintiff did not allege that any transactions occurred in New York. Judge Judd rejected the first contention. He also appeared to have some doubt whether even the written examination in New York amounted to the transaction of business under section 302, but pointed out that, in any event, plaintiff's

> claim is not based on the transaction of business in New York, where he took a written examination which he passed, but on his being failed in oral examinations administered and graded outside New York.

Accordingly, the judge held that plaintiff did not allege "a cause of action arising from" any acts performed in New York, and the court lacked jurisdiction over the Board.

The only arguments advanced on appeal concern the applicability of section 302(a) (1). The Board continues to press its point that the section does not apply to non-commercial activities. Even if its position were correct—and we do not suggest that it is [4]—it is a considerable strain to characterize the Board's activities as non-commercial. Non-profit they may be, but the certifying of practicing physicians as specialists obviously has a direct professional and financial effect upon the doctors involved. In any event, we are not required to rule upon the issue because we think that the judge's second ruling was correct.

■ Section 302 was enacted by the New York State legislature in 1963. It was an attempt to bring some order into the chaotic field of personal jurisdiction over nondomiciliary defendants and to expand the type of case over which the New York courts would take jurisdiction. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), had laid down a new due process test for jurisdiction: Were the contacts with the state sufficient so that allowing a nondomiciliary defendant to be sued there did not "offend traditional notions of fair play and substantial justice"? *Id.* at 316, 66 S.Ct. at 158. Where such a defendant is sued on a cause of action clearly arising from its activities outside the state, the level of defendant's conduct in the state required to subject the defendant to suit there raises particularly thorny problems under this test. These have been fought out in New York under the "doing business" test, now embodied in CPLR § 301; it is clear that the activities of defendant in this case did not rise to the level of "doing business." However, the long-arm statute bases jurisdiction on a level of conduct far less than that necessary for the "doing" of business, meeting what was felt to be the requirement of due process by demanding a direct relation between the cause of action and the in-state conduct. Accordingly, section 302(a) (1) requires only that the defendant "transact" business in the state, but the cause of action must "arise" from the business so transacted. The latter requirement is thus an important condition of acquiring jurisdiction over the non-domiciliary defendant.

■ In deciding that issue, we recognize that New York law controls, Friedr. Zoellner (New York) Corp. v. Tex Metals Co., 396 F.2d 300 (2 Cir. 1968), but we cannot find any sure guidance from the New York cases. While there has been much discussion of what amounts to transacting business under section 302(a) (1),[5] there has been little analysis of when a cause of action "arises" out of business so transacted. In Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 281 N.Y.S.2d

---

4. For the contrary conclusion, the district court relied on Kochenthal v. Kochenthal, 28 A.D.2d 117, 282 N.Y.S.2d 36 (App. Div.2d Dep't 1967), which the Board says must be limited to its facts.

5. See, e. g., McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967) ; McLaughlin, Supplementary Practice Commentary, CPLR § 302 (McKinney's Supp.1969).

41, 227 N.E.2d 851 cert. denied, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967), plaintiff had fallen in his room in the London Hilton and sued Hilton Hotels (U.K.) Ltd., a British corporation, in New York. The New York Court of Appeals held that section 302(a) (1) did not apply because

> the plaintiff does not allege that he had any dealings at all with the British corporate defendant or its agents in this State. Therefore, it may not be said that his cause of action *arose* from the British corporation's transaction of any business here * * *.[6]

Id. 19 N.Y.2d at 536, 281 N.Y.S.2d at 42, 227 N.E.2d at 852. In Frummer, the New York Court of Appeals cited Kramer v. Vogl, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966), for the proposition just quoted. However, neither that case nor others we can find dealing with when a transaction "arises" from business transacted in New York[7] give a clear indication of how the New York courts would rule here.

■ For purposes of analysis it may be helpful to consider defendant's activities in a few hypothetical situations. If defendant gave only the oral examinations described above, contact with New York would be minimal. The oral examination would occur at an out-of-state hospital convenient to the two examining specialists; their testimony would be crucial in any challenge as to why a physician failed; and New York would obviously be a less convenient forum for this purpose than the state where the oral examination occurred. Therefore, even though New York does have a legitimate interest in the standards of an agency that certifies physicians who practice within its borders, we do not think that on those facts defendant Board would be regarded as transacting business in New York under section 302(a) (1).[8] Assume, however, that defendant gave only written examinations as set forth above and plaintiff's claim related to one of them. Since the written examination does occur in New York and takes six and one-half hours to administer, plaintiff would have a much more persuasive case for jurisdiction under section 302(a) (1), although we need not decide whether he would carry the day.[9] Therefore, the strength of plaintiff's position must depend upon whether the oral and written examinations should be considered as a unit so that a claim of abuse in administration of the former could properly "arise" out of the latter. While it is true that plaintiff could not take the oral examination until he had passed the written one, several factors persuade us that to regard the two as one unit, rather than separately, would be an unrealistic view of the activities of the Board. The written and oral examinations here were given in different states. The location of the former was designated by plaintiff for his own convenience, while the latter had to be taken at a place convenient to the Board's two examining physicians. The two types of examination were separated not only by geography, but by time; plaintiff took the second oral examination four years after passing the written. The oral examination —in contrast to the written—is an individualized affair, different in scope and

---

6. The court went on to hold, however, that defendant was doing business in New York in the traditional sense and therefore jurisdiction was proper under CPLR § 301.

7. *E. g.,* compare Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317 (2d Cir. 1964), with Banco Espanol v. DuPont, 24 A.D. 2d 445, 261 N.Y.S.2d 233 (App.Div. 1st Dep't 1965). See also Peters v. Robin Airlines, 281 App.Div. 903, 120 N.Y.S.2d 1 (App.Div. 2d Dep't 1953).

8. *A fortiori* the defendant would not be "doing business" under § 301.

9. The case for jurisdiction would be at its most appealing if complaint were made by a third party, such as a patient who resides in New York, that the Board's standards were too loose rather than too rigid.

concept from the written examination which by the nature of things can be graded more objectively and consistently. In other words, while we get no compelling guidance from the New York courts on this aspect of the case, we see no strong reason why the written and oral examinations should both be regarded as one transaction, the heart of which occurred in New York. We hold that plaintiff's claim arises out of events that took place only in St. Louis or Philadelphia, and does not arise out of the transaction of business in New York. Accordingly, we agree with Judge Judd that section 302(a) (1) does not apply.[10]

Judgment affirmed.

10. We have not considered whether jurisdiction may lie here under either subsection (2) or (3) of section 302(a). Such an inquiry would raise difficult questions; e. g., does plaintiff's complaint allege a tort; to the law of which state do we refer to determine that issue; does defendant derive "substantial revenue" either from its activities in the state or from "interstate * * * commerce"? Appellant has ignored these sections both in the district court and here, despite the fact that Judge Judd raised the issue below on his own motion. Since appellant has not seen fit to pursue this line of inquiry, the state of the record is inadequate to resolve satisfactorily the difficult issues presented; we therefore feel that it is inappropriate for us to do so at this point.