**XEDIT CORPORATION, Plaintiff,**
v.
**HARVEL INDUSTRIES CORP., FIDELI-PAC, a division of Harvel Industries Corp. and Daniel McCloskey, Defendants.**

No. 78 Civ. 320 (MEF).

United States District Court,
S. D. New York.

July 21, 1978.

Sanford R. Ross, New York City, for plaintiff.

Laventhall & Zicklin, New York City, for defendants.

## MEMORANDUM

FRANKEL, District Judge.

This action was commenced by Xedit Corporation against Harvel Industries Corp., Fidelipac,[1] a division of Harvel, and David McCloskey, general manager of Fidelipac, for unlawful misappropriation of trade secrets and unjust enrichment. Defendants have moved to dismiss on the ground that the court lacks personal jurisdiction over them.

### I.

Xedit is a New York corporation. Defendant Harvel is a New Jersey corporation having its principal place of business in Wheeling, Illinois. Defendant Fidelipac is a New Jersey based product division of Harvel in the business of distributing electronic equipment to independent dealers for resale to radio stations throughout the United States. Harvel and its Fidelipac division are not authorized to transact business in New York and do not maintain an office, telephone, employee, or agent in New York. Defendant McCloskey is a resident of New Jersey who avers that he has "no contact with the State of New York at all except to visit New York from time to time to attend various trade shows and to visit certain vendors of Fidelipac."

On November 1, 1976, McCloskey and Fidelipac's sales manager attended a trade show in New York City. There McCloskey met Claude Karczmer, president of Xedit, and discussed the possibility of Fidelipac's purchasing certain quantities of a drift and flutter meter that Xedit had on display. As a result of their meeting,[2] a sample unit.

---

1. Fidelipac is misspelled "Fidelpac" in the complaint.

2. Mr. Karczmer's opposing affidavit refers to "at least two meetings at the trade show. . . ." The complaint, however, speaks only of "an initial contact between representatives of Xedit and Fidelpac [*sic*] at a trade show in New York," and Mr. McCloskey's affidavit recounts only one meeting. Resolution of the conflict, if there is one, is unnecessary as the court's conclusions of law would not differ if two meetings were proved to have occurred.

was shipped to Fidelipac on November 15, 1976. Thereafter, discussions and negotiations were pursued by telephone and by mail concerning price, volume, and down payment terms. Xedit alleges that during this period, in approximately January 1977, the defendants were supplied "all important trade secrets," and that after negotiations were terminated in June 1977, the defendants misappropriated those secrets in order to produce their own flutter meter.

It is undisputed that none of the defendants reentered New York to conduct negotiations after the trade show meeting.

## II.

■ Plaintiff rests its claim for personal jurisdiction on New York CPLR § 302(a)(1),[3] which reads as follows:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

"1. transacts any business within the state . . . ."

A careful reading of the statute makes clear that it requires not only that the defendant "transact business" in the state, but that the cause of action "arise" from the business so transacted. *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355, 357 (2d Cir. 1970).

√ ■ Under New York law, interstate negotiations by telephone are not contacts that subject a defendant to jurisdiction at the instance of the New York party receiving the communication. *Glassman v. Hyder*, 23 N.Y.2d 354, 363, 296 N.Y.S.2d 783, 789–90, 244 N.E.2d 259 (1968).[4] Accordingly, both parties focus on the November 1, 1976, trade show meeting. Defendants argue that the meeting was too insubstantial to constitute transacting business within the state and that, in any event, the cause of action does not arise out of the defendants' New York acts. Plaintiff contends that the meeting fulfills both statutory requisites.

■ This court is satisfied that the November 1, 1976, meeting constitutes transacting business within New York for the purposes of section 302(a)(1). This case does not pose an issue of statutory interpretation like that in *Kramer v. Vogl*, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966), where the New York Court of Appeals considered whether the transacting business requirement was met by a nonresident who never entered New York but sent goods into the state pursuant to in-state orders. Here it is undisputed that Mr. McCloskey, as agent for the corporate defendants, physically entered the forum, met with the plaintiff, and discussed business. The real question is whether the cause of action for misappropriation of trade secrets can be said to have arisen out of this business transaction.

**3.** Section 302(a)(1) is not limited to actions in contract, *Longines-Wittnauer Watch Co. v. Barnes & Reinecke*, 15 N.Y.2d 443, 466, 261 N.Y.S.2d 8, 26, 209 N.E.2d 68 (1965). While 302(a)(1) is not explicitly cited in plaintiff's memorandum of law, all the cases relied upon are 302(a)(1) cases. Moreover, section 301 ("doing business" in New York) and section 302(a)(3) ("commits a tortious act without the state causing injury to person or property within the state . . .") are foreclosed under applicable New York precedents. "Doing business" requires evidence of business transacted with "a fair measure of permanence and continuity," *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917). And injury does not occur in New York, within the meaning of

302(a)(3), simply because the plaintiff is domiciled in New York and suffers loss of income in New York. *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428 (2d Cir. 1971).

**4.** But see *Parke-Bernet Galleries v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), in which jurisdiction was sustained over a nonresident defendant who actively participated in a New York auction by means of an open telephone line, his bids being relayed to the auctioneer, who announced them to the other bidders in the auction room. The Court of Appeals distinguished this "active participation in the bidding" from the "simple placing of an order by telephone."

■ The gravamen of the complaint, to repeat, is misappropriation of trade secrets.[5] The Restatement of the Law of Torts § 757 defines the tort as follows:

"One who discloses or uses another's trade secret, without privilege to do so, is liable to the other if . . .

"(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him. . . . ."

According to the complaint, the confidential information was reposed in Fidelipac in New Jersey in January 1977, and not at the trade show meeting in New York in November 1976. The November 1976 meeting was merely a first encounter at which the possibility of a business relationship was explored. It is not alleged that the meeting caused or furthered the alleged misappropriation except to the extent that it was a link in the chain of events leading to the claim for which relief is sought. But "something more is needed." Weinstein, Korn, and Miller, New York Civil Practice § 302.05 at 3–80. The defendants' New York activities must be substantially proximate to the allegedly unlawful acts before the cause of action can be said to arise out of those activities. This determination is necessarily one of degree, informed by considerations of public policy and fundamental fairness.[6] Here, the allegedly tortious activities are sufficiently separated by time and geography, and sufficiently different in quality, from defendants' New York activities that plaintiff's claim does not arise out of the transaction of business by the defendants in New York.

■ The cases on which plaintiff relies to support jurisdiction are readily distinguishable. All are breach of contract actions in which substantial preliminary negotiations took place in New York. Thus, in *Moser v. Boatman,* 392 F.Supp. 270 (E.D.N.Y.1975), jurisdiction in New York was sus-

tained on a showing that defendants were present in New York on two occasions "where agreement on at least a number of essential terms was apparently reached." *Id.* at 274. In *Karlin v. Avis,* 326 F.Supp. 1325 (E.D.N.Y.1971), the brokerage agreement in dispute was "concluded in New York." *Id.* at 1328. And in *ECC Corporation v. Slater Electric, Inc.,* 336 F.Supp. 148 (E.D.N.Y.1971), jurisdiction was sustained on a finding that "the critical meeting of the contracting parties' minds on the principal heads of agreement with respect to the licensing arrangement was arrived at in New York . . . ." *Id.* at 151. Together, these cases stand for the proposition that jurisdiction is proper in a breach of contract action where the defendant has engaged in substantial preliminary negotiations *on the contract* in New York. In such a case, there can be little doubt that the cause of action arises from the business transacted in New York, even though the last act marking the formal execution of the contract occurs outside the forum. See also *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). The cases, however, do not support jurisdiction in this tort action where the critical elements of the tort occurred in New Jersey. Indeed, even if this were a breach of contract action, the "quantum of negotiation which would satisfy section 302(a)(1)," *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 91 (2d Cir. 1975), did not take place at the trade show meeting.

While each case must be judged on its own facts, we find support for our decision in *American Radio Association v. A. S. Abell Co.,* 58 Misc.2d 483, 296 N.Y.S.2d 21 (1968), and *Fontanetta v. American Board of Internal Medicine,* 421 F.2d 355 (2d Cir. 1970). In *American Radio Association,* an action for libel against the Baltimore Sun, plaintiff sought jurisdiction based on the fact that the newspaper sold four hundred

---

5. The count charging unjust enrichment simply repeats the allegations of misappropriation of trade secrets.

6. See, e. g., *Drexel Burnham & Co., Inc. v. Silverman,* 75 Misc.2d 904, 349 N.Y.S.2d 293, 294 (1973) ("not always an easy task to achieve

a workable result under Sec. 302 CPLR. For the courts must try to protect its [*sic*] citizens, maintain New York as a commercial center, avoid burdening our calendars and satisfy the constitutional safeguards of due process.").

copies in New York and obtained three percent of its advertising revenue from New York advertisers. The court dismissed the complaint, finding that since the acts of publication, distribution, and circulation which underlay the grievances occurred in Baltimore, and not New York, the cause of action did not arise out of the business transacted in New York. In *Fontanetta,* plaintiff claimed he was arbitrarily denied certification as an internal medicine specialist when the defendant failed him on his oral examination and refused to provide the reason for its decision. Jurisdiction was predicated on a written exam given by the defendant and passed by the plaintiff in New York as part of the certification process. The court found the written and oral exams were distinct events, separated by geography and time, and ruled that since plaintiff's claim arose out of the oral exam which had no New York connection, the requirements of 302(a)(1) were not satisfied.

While the instant case may provide a closer question than *American Radio Association* or *Fontanetta,* our conclusion is the same. The cause of action for misappropriation of trade secrets does not arise out of the defendants' forum activities. Accordingly, the defendants' motion to dismiss is granted.

So ordered.