**HOFFRITZ FOR CUTLERY, INC. and Edwin Jay, Inc., Plaintiffs-Appellants,**

v.

**AMAJAC, LTD. and Jack E. Ayers, Defendants-Appellees.**

No. 565, Docket 84–7703.

United States Court of Appeals, Second Circuit.

Argued Jan. 14, 1985.

Decided May 15, 1985.

Edward L. Sadowsky, New York City (Harris N. Cogan, Tenzer, Greenblatt, Fallon & Kaplan, New York City, of counsel), for plaintiffs-appellants.

Sidney H. Stein, New York City (Robert H. Kaplan, Stein, Zauderer, Ellenhorn, Friedman & Kaplan, New York City, of counsel), for defendants-appellees.

Before OAKES, CARDAMONE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

This appeal requires us to decide whether the courts of the State of New York would find jurisdiction over non-resident defendants under its longarm statute, N.Y. CPLR section 302(a), or on a theory of defendants' "presence" under CPLR section 301. The district court held that they would not, and dismissed the complaint. Plaintiffs appeal from that order; for the reasons set forth below, we reverse, and remand the action to the district court.

## BACKGROUND

The appeal before us arises from an alleged breach of a franchise agreement entered into by the parties on August 29, 1970. The plaintiffs are New York corporations: Hoffritz for Cutlery, Inc., which operates a chain of cutlery and gift stores and owns the Hoffritz name, and Edwin Jay, Inc., which is the exclusive wholesale supplier of Hoffritz brand merchandise. The stock in both these corporations is held by the same shareholder; plaintiffs are hereinafter referred to as "Hoffritz." The defendants are Amajac, Ltd. ("Amajac"), a Georgia corporation, and Jack E. Ayers, president and sole shareholder of Amajac, a Georgia resident and domiciliary.

In its complaint, Hoffritz alleged three breaches of the franchise agreement, all connected with Amajac's Atlanta store lease: (1) that Ayers was named as lessee, rather than Amajac; (2) that the lease was not made assignable to Hoffritz; and (3) that Hoffritz was not provided a copy of the lease. Hoffritz sought an injunction requiring the return of all materials bearing the Hoffritz name, and liquidated and consequential damages for breach of contract. By order dated July 18, 1984, the district court herein, without holding an evidentiary hearing, granted defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction. The district judge applied New York law, and concluded that neither of the jurisdictional bases alleged by plaintiffs would suffice to sustain jurisdiction in a New York court.

The following facts are either uncontested or appear from the plaintiffs' papers in opposition to defendants' motion to dismiss; because the dismissal took place without a

hearing, this Court will accept them as true for purposes of this appeal. *See Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 768 (2d Cir.1983); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981); *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 430 (2d Cir.1971). Amajac does not maintain an office in New York, nor is it licensed to do business there; it has no officers, directors or employees in New York; it has no New York telephone listing or mailing address; it has no New York subsidiaries, divisions or affiliates; finally, it owns no property in New York. On the other hand, the initial discussions pertaining to the franchise agreement were held in New York. At these meetings, which were attended by Ayers on behalf of Amajac, the parties discussed projected sales, store design, inventory cost, and the terms of the proposed agreement. Subsequent negotiations took place in Atlanta, Georgia and Detroit, Michigan. The final franchise agreement was signed by Amajac in Georgia, and was sent to plaintiffs in New York, where they signed it. One term of this agreement authorized plaintiffs at their option to resolve disputes by arbitration, and provided further that such arbitration would be held in New York.

During the life of the agreement, Ayers corresponded extensively with Hoffritz concerning the business relations between them. He also visited New York some fifty-four times; during each of these visits, he met with Hoffritz representatives to discuss his franchised business. At these meetings, virtually the entire range of the business was discussed, including promotions, signs, traffic flow, display matters, prices, types of items carried or sought to be carried, breakage on shipments, outstanding balances and interest due, returns, and so on.

The district court held that these facts were insufficient to sustain jurisdiction over either Amajac or Ayers in a New York court. On appeal, plaintiffs urge that jurisdiction may properly be found under CPLR § 301, because Ayers individually is "doing business' in New York with suffi-

cient continuity and permanence to justify his being haled before a New York court. Additionally, they claim that jurisdiction is proper under the New York longarm statute, CPLR § 302(a)(1). We turn now to these contentions.

## DISCUSSION

There are several oft-encountered benchmarks in the law of personal jurisdiction. First, personal jurisdiction over a defendant in a diversity action is determined by reference to the law of the jurisdiction in which the court sits, *United States v. First National City Bank,* 379 U.S. 378, 381–82, 85 S.Ct. 528, 530–31, 13 L.Ed.2d 365 (1965); *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir.1963) (en banc). The burden of establishing jurisdiction over a defendant, by a preponderance of the evidence, is upon the plaintiff. *Marine Midland Bank, N.A.,* 664 F.2d at 899. Until an evidentiary hearing is held, however, the plaintiff need make only a prima facie showing that jurisdiction exists, *Beacon Enterprises, Inc.,* 715 F.2d at 768, and this remains true notwithstanding a controverting presentation by the moving party. *Marine Midland Bank, N.A.,* 664 F.2d at 904; *see American Eutectic,* 439 F.2d at 430. In the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor. *E.g., Beacon Enterprises, Inc.,* 715 F.2d at 768; *Marine Midland Bank, N.A.,* 664 F.2d at 904; *Cranston Print Works Co. v. Brockmann International A.G.,* 521 F.Supp. 609, 613 (S.D.N.Y.1981); *Freeman v. Gordon & Breach, Science Publishers, Inc.,* 398 F.Supp. 519, 520 (S.D.N.Y.1975). Bearing these points in mind, we address first plaintiffs' contention that CPLR section 301 provides jurisdiction over Ayers.

Section 301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have

been exercised heretofore." In the case of a foreign corporation, section 301 keeps alive the case law existing prior to its enactment, which provided that a corporation is "doing business" and is therefore "present" in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917); *accord Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982). A non-domiciliary may be served outside New York, and sued upon any cause of action, if it engages in a continuous and systematic course of doing business in New York. *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *see Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951, 953 (2d Cir.1967). Whether a corporation may be deemed to be present by virtue of its doing business in the jurisdiction depends upon the application of a "simple and pragmatic" test. *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 432, 260 N.Y.S.2d 625, 628–29, 208 N.E.2d 439, 441 (1965). We are not persuaded that this test is met upon the present record.

■ We note that Hoffritz's argument in the district court was that both Amajac, and Ayers individually, were doing business in New York. On appeal, however, Hoffritz argues only that Ayers, individually, was doing business in New York. In this connection, we are unaware of any decision of the New York State Court of Appeals addressing the question whether an individual, as opposed to a corporation, may properly be the subject of "doing busi-

ness" jurisdiction. The Appellate Division cases on the issue are divided. *Compare In re Nilsa B. v. Clyde H.*, 84 A.D.2d 295, 445 N.Y.S.2d 579 (2d Dep't 1981) *with ABKCO Industries, Inc. v. Lennon*, 52 A.D.2d 435, 384 N.Y.S.2d 781 (1st Dep't 1976). We find it unnecessary, however, to resolve this issue because, even accepting the possibility that section 301 "doing business" jurisdiction may properly exist over an individual, we agree with district judge that there has been an insufficient showing to make out even a prima facie case for such jurisdiction here. The New York courts, in applying the pragmatic test for section 301 jurisdiction, have focused upon factors including: the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state. *See, e.g., Frummer*, 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 227 N.E.2d at 853; *Bryant*, 15 N.Y.2d at 430–31, 260 N.Y.S.2d at 627–28, 208 N.E.2d at 441–42; *see also Liquid Carriers*, 375 F.2d at 953. None of these elements are present in this case.[1] Accordingly, we hold that a showing of jurisdiction under section 301 has not been made.

■ That a defendant is not "doing business" in New York, however, does not require us to hold that it is not subject to suit in New York. If the defendant has "transacted business" in New York, it is suable on any cause of action that arises out of the transaction. CPLR § 302(a)(1). The showing necessary for a finding that defendant "transacted business" and is suable on a cause of action arising from that transaction is considerably less than that needed to establish defendant's "doing business," which renders the defendant subject to suit on even an unrelated cause of action. *Beacon Enterprises, Inc.*, 715 F.2d at 763; *Fontanetta v. American*

---

1. Hoffritz, in attempting to demonstrate that Ayers maintained an office in New York, proffered a memo from its files, which reads in its entirety: "Mr. Ayres [sic] called from NY (claims his NY Off)." This single sentence, author unknown, is insufficient by itself to make out a prima facie case for section 301 jurisdiction—whatever its probative value on the question of Ayers' alleged office, no showing has been made with respect to any of the other factors relevant to Ayers' "doing business" in New York.

*Board of Internal Medicine,* 421 F.2d 355, 357 (2d Cir.1970); *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 653–54, 394 N.Y. S.2d 844, 847–48, 363 N.E.2d 551, 554–55 (1977). This principle was recognized by the district judge, who found that Amajac and Ayers were not "doing business" in New York, but nevertheless held that they had "transacted business" there. Memorandum Endorsement at 1.

The district judge, however, while finding that the defendants had transacted business in New York, held that the claim sought to be asserted by Hoffritz did not arise out of the transaction, as required by CPLR section 302. Accordingly, he dismissed the complaint.

We agree with the district judge that defendants transacted business in New York; indeed, defendants do not dispute this. We disagree, however, with the district court's conclusion that the cause of action did not arise out of the transaction of business in the state. In so ruling, the district court characterized the New York contacts of defendants as "the preliminary contractual discussions in New York ... the sending to New York of purchase orders and volume reports, and the occasional meetings in New York to discuss business prospects." Memorandum Endorsement at 1. The correspondence between the parties that appears in the record strongly suggests, however, that the meetings in New York were far from "occasional," instead taking place at frequent intervals over approximately a ten-year period. At these meetings, virtually every aspect of the franchised business was discussed, including promotions, signs, traffic flow, display matters, variety of items carried, breakage in shipments, and outstanding balances due. In our view, this contact with New York cannot fairly be considered to be merely "occasional meetings to discuss business prospects."

That we view the contacts as more extensive than did the trial judge, however, still leaves unresolved the question whether the cause of action asserted here, for breach of the franchise agreement, arises out of the

business that was transacted in New York. We hold that it does. While it is true, as the district court noted, that plaintiffs' cause of action stems from allegedly improper conduct concerning defendants' lease for a store in Georgia, it must not be overlooked that the action arises directly from alleged breaches of the *franchise agreement,* and not of the lease. Moreover, the district court's interpretation of CPLR section 302(a)(1) would lead to a finding of no jurisdiction over defendants merely on the basis that the acts alleged in the complaint did not take place in New York. Thus, the trial judge gave overwhelming weight to the fact that the lease entered into by defendants allegedly in breach of the franchise agreement was for property in Georgia, and was apparently negotiated there. We find this view to be too narrow as respects New York longarm jurisdiction.

First, New York does not require that the acts constituting the alleged breach of contract take place in New York. Indeed, such a requirement would lead to the unusual result that a New York court would have jurisdiction of only certain claims arising from the breach of an otherwise indivisible contract, a position we are reluctant to ascribe to the New York courts in the absence of a pronouncement from them to that effect. Rather, having established that defendants transacted business in New York, plaintiffs need show only that the cause of action is sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York. *See Liquid Carriers,* 375 F.2d at 956 (breach of contract took place in Louisiana; jurisdiction in New York upheld); *American Eutectic,* 439 F.2d at 430, 431–32 (breaches of employment contracts took place in Kentucky and Pennsylvania; jurisdiction in New York upheld); *George Reiner & Co.,* 41 N.Y.2d at 649, 653, 394 N.Y.S.2d at 845, 847, 363 N.E.2d at 551–52 (breach of employment contract took place in New England; jurisdiction in New York upheld); *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 15–16, 308 N.Y.S.2d 337,

338–39, 256 N.E.2d 506, 507 (1970) (breach of contract took place in California; jurisdiction in New York upheld). Such a showing has been made here. The "undenied acts of defendant's officers in New York in defendant's behalf in furtherance of the performance of the contract constituted the transaction of business within this State in connection with the subject of this action, and within the meaning and intent of CPLR 302(a) subd. 1, so as to confer jurisdiction of this action upon the courts of New York." *A. Millner Co. v. Noudar, Lda.*, 24 A.D.2d 326, 331, 266 N.Y.S.2d 289, 295 (1st Dep't 1966); *see Iroquois Gas Corp. v. Collins*, 42 Misc.2d 632, 635, 248 N.Y.S.2d 494, 497 (Sup.Ct. Erie County 1964), *aff'd mem.*, 23 A.D.2d 823, 258 N.Y.S.2d 376 (4th Dep't 1965). Both *American Eutectic* and *Liquid Carriers*, decisions of this Court, have been cited with approval by the New York Court of Appeals. *George Reiner & Co.*, 41 N.Y.2d at 654, 394 N.Y.S.2d at 848, 363 N.E.2d at 555.

Defendants place great weight on the fact that the contract was not executed by them in New York,[2] and that the final negotiations for the contract were not conducted in New York. Just as it is unnecessary for the acts constituting the breach of contract to take place in New York in order for a New York court to sustain personal jurisdiction, it is unnecessary that final negotiations or indeed execution of the contract take place in New York. *E.g., Hi Fashion Wigs, Inc. v. Peter Hammond Advertising, Inc.*, 32 N.Y.2d 583, 587, 347 N.Y.S.2d 47, 50, 300 N.E.2d 421, 423 (1973) (court would sustain jurisdiction even if it "were to assume that the contract ... was not made in New York"); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 456–57, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 ("[T]he statutory test [of CPLR section 302(a)(1) ] may be satisfied by a showing of other purposeful acts

performed by the appellant in this State in relation to the contract, albeit preliminary or subsequent to its execution.") (footnote omitted), *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). Indeed, the case in which the defendant was physically present in New York at the time the contract was made, in addition to sufficient other contacts, is merely "the clearest sort of case in which [New York] courts would have 302 jurisdiction." *Parke-Bernet Galleries, Inc.*, 26 N.Y.2d at 17, 308 N.Y.S.2d at 340, 256 N.E.2d at 508. The courts of New York have not indicated that they consider their jurisdiction to be limited to such a "clearest sort of case."

In our view, this case presents a perhaps somewhat less clear basis for jurisdiction under the CPLR than would exist if the defendants, in addition to their existing New York contacts, were physically present in New York when they executed the contract. We nevertheless consider the assertion of jurisdiction over Ayers and Amajac to be firmly grounded in the interpretation of section 302(a)(1) by the courts of New York. Viewing the totality of the circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit, we conclude that there is a substantial nexus between these activities, including the preliminary contract negotiations in New York and the frequent later visits to New York, and the alleged breach of the franchise agreement. *See Liquid Carriers*, 375 F.2d at 954–55; *Hi Fashion Wigs, Inc.*, 32 N.Y.2d at 587, 347 N.Y.S.2d at 50, 300 N.E.2d at 423; *Longines-Wittnauer Watch Co.*, 15 N.Y.2d at 456–57, 261 N.Y.S.2d at 18, 209 N.E.2d at 75. This is not the kind of case presented in *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), wherein a visit of less than one working day by defendant's agent was characterized as an

---

**2.** Hoffritz, on the other hand, would have us weigh in its favor the fact that the last formal act of execution, namely Hoffritz's signing of the franchise agreement, occurred in New York. This fact, however, is of little, if any, jurisdictional significance. "[T]he execution [of the contract] in New York was performed by [Hoffritz] and not [defendants]; therefore, it cannot

be said that *defendant* transacted business in New York [by virtue of the contract's execution]." *Galgay v. Bulletin Co.*, 504 F.2d 1062, 1065 (2d Cir.1974) (emphasis in original); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, — U.S. ——, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

"infinitesimal" contact insufficient to sustain jurisdiction over defendant. Similar circumstances prompted this Court to reach the same result in *Galgay v. Bulletin Co.,* 504 F.2d 1062 (2d Cir.1974). Moreover, in *Galgay* we noted that the key inquiry was "whether, looking at 'the totality of the defendant's activities within the forum,' purposeful acts have been performed in New York by the foreign corporation in relation to the contract, 'albeit preliminary or subsequent to its execution.'" *Id.* at 1064 (quoting *Longines-Wittnauer Watch Co.,* 15 N.Y.2d at 457 & n. 5, 261 N.Y.S.2d at 18, 209 N.E.2d at 75).

In the case before us, defendants visited New York numerous times for the purpose of conducting franchise-related activities, and the New York Court of Appeals' concern, expressed in *McKee,* that "every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York [would run] the risk of being subjected to the personal jurisdiction of [the New York] courts," 20 N.Y.2d at 382, 283 N.Y.S.2d at 37, 229 N.E.2d at 607, is not implicated here. Ayers' activities on behalf of Amajac were extensive and demonstrated far more than an "infinitesimal" degree of contact with New York.

Nor is this case of the sort presented in *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757 (2d Cir.1983), or *Faherty v. Fender,* 572 F.Supp. 142 (S.D.N.Y.1983), both of which held that no jurisdiction existed in New York over foreign defendants because the plaintiffs' causes of action did not arise out of defendants' forum contacts. In *Beacon Enterprises,* the action was for a declaratory judgment that plaintiff had not injured defendant. This Court reasoned that an insufficient nexus existed between defendant's shipment of goods into New York and plaintiff's declaratory judgment action, 715 F.2d at 765, and similarly that defendant's letter sent to plaintiff in New York alleging infringement in an unspecified locale and threatening litigation in an unspecified forum did not constitute a "transaction of business" in New York. *Id.* at 766. In *Faherty,* the district court placed significant weight on the fact that while the contracts at issue might have been negotiated in New York, plaintiff's claim was in tort, not contract. 572 F.Supp. at 148.

In *Fontanetta v. American Board of Internal Medicine,* 421 F.2d 355, 357 (2d Cir.1970), this Court spoke of the necessity under section 302(a)(1) of showing a "direct relation between the cause of action and the in-state conduct." Even considering that the *Fontanetta* court was "in the unenviable position of being required to decide questions of 302 in personam jurisdiction as the New York courts would decide such questions, but ... without benefit of State precedent," *George Reiner & Co.,* 41 N.Y.2d at 654, 394 N.Y.S.2d at 848, 363 N.E.2d at 555, we do not view *Fontanetta* as inconsistent with our holding today that, in the case before us, a sufficiently direct showing has been made. *Fontanetta* involved a physician who sought to be certified as an internist by the defendant Board. The Board required for certification the successful taking of both a written examination and an oral examination. Plaintiff had taken and passed the written examination in New York. He had, however, twice failed the oral examination. The oral examinations were different in both scope and concept from the written examination, and were administered to plaintiff two years and four years after the written exam, once in Philadelphia and once in St. Louis. We held that the substantive differences between the two kinds of examination, together with the separation both in time and geographic location of the oral examination from the written examination, rendered unrealistic a view of the two as one unit. Because the oral examinations had not been administered in New York, and plaintiff's claim did not concern the written examination, we ruled that the district court lacked a basis for asserting personal jurisdiction over the Board. 421 F.2d at 358–59. By contrast, the case before us presents an action for breach of contract, and a defendant who has transacted substantial business under that contract in New York. We have no difficulty in holding, as we believe a New York state court would, that Hoffritz's cause of action is

sufficiently connected to defendants' transaction of business in New York to justify asserting jurisdiction over defendant in New York.

Nor do we consider such a holding to be contrary to the teaching of the Supreme Court in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In light of the totality of circumstances in this case, both the preliminary negotiations in New York and the numerous subsequent New York meetings provide a sufficient basis for concluding that defendants purposefully availed themselves of the privilege of conducting activities in New York. We hold that the constitutional standards for the assertion of jurisdiction by a state court over a foreign defendant are met here. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

CONCLUSION

For the above-stated reasons, we reverse the judgment of the district court and remand the case for further proceedings consistent with the foregoing.