**STANDARD ENTERPRISES, INC., Plaintiff,**

v.

**BAG–IT, INCORPORATED, Defendant.**

**86 Civ. 6746 (RWS).**

United States District Court, S.D. New York.

Oct. 14, 1987.

Felcher & Felcher, New York City (Howard B. Felcher, of counsel), for plaintiff.

Rubin, Hay & Gould, P.C., Framingham, Mass. (Rodney E. Gould, of counsel), Parker & Duryee, New York City (A. George Koevary, of counsel), for defendant.

## OPINION

SWEET, District Judge.

In this action brought by plaintiff Standard Enterprises, Ltd. ("Standard"), defendant Bag-It, Incorporated ("Bag-It") has moved to dismiss pursuant to Fed.R.Civ.P. 12 on grounds of lack of personal jurisdiction and insufficiency of process. Argument was head on May 29, 1987. For the reasons set forth below, Bag-It's application is granted and the complaint is dismissed for lack of jurisdiction.

### Background and Prior Proceedings

Standard filed the complaint in this matter on August 29, 1986 and attempted service of process by mail. Bag-It received actual notice of the complaint on October 7, 1986 after the court had entered a default judgment in favor of Standard on October 6, 1986. This court granted Bag-It's motion to vacate the default judgment pursuant to Fed.R.Civ.P. 60(b) in an order entered February 18, 1987.

### Facts

Standard, a New York corporation with its principal place of business in New York, has brought suit against Bag-It, a Massa-chusetts corporation with its sole place of business in Massachusetts, for money owed for the sale of plastic bags delivered by Standard but never paid for. Standard seeks the amounts of three outstanding invoices, totalling $46,750.36 plus interest.[1]

The parties are in dispute as to the relationship existing between them. According to affidavits submitted by Standard, Bag-It transacted business with Standard in New York during a year-long period. According to Bag-It, however, it has never done business in New York and denies having transacted business with Standard.

Standard has also submitted copies of three checks from Bag-It to Standard, four invoices from Standard to Bag-It, and one type-written correspondence from Bag-It to Jonas Ameer ("Ameer"), Standard's sales manager. In addition, Standard has submitted an affidavit from its Development and Research Manager Edwin Lockett ("Lockett"), who describes conversations that he has had with employees, officers, or owners of six other New York companies, and reports that they told him that Bag-It either has done business with them recently or has done so continuously and systematically. Standard has submitted no affidavits from these officers and no other documentation to prove these transactions aside from Lockett's hearsay affidavit. These contacts, in addition to Bag-It's phone calls to Standard, and the three invoices out of which the action arises, constitute the sum total of the connections between Bag-It and New York and Bag-It and Standard, upon which Standard rests its assertion of personal jurisdiction. Standard presents all these contacts in support of its assertion of *in personam* jurisdiction pursuant to N.Y. C.P.L.R. § 301. With regard to its assertion pursuant to N.Y. C.P.L.R. § 302, Standard necessarily relies upon only those contacts out of which the cause of action arises: the three invoices from Standard to Bag-It, the 800 number toll-free phone calls, and the brief letter to Standard's sales manager.

---

1. Although Standard in its papers once refers to the amount owed to it by Bag-It as in excess of $92,000, the complaint does not so allege and the facts as otherwise presented do not support such a contention.

According to Bag-It, it made oral purchase orders with Pine Associates, a Massachusetts company, for merchandise manufactured in Brazil, to be shipped directly to Bag-It from Brazil. Bag-It says that only after making the purchase orders with Pine did Pine notify Bag-It that it would receive invoices from Standard. Finally, Bag-It contends that after problems arose with delivery of the merchandise, Pine advised Bag-It to contact Standard at Standard's 800 toll-free telephone number. Bag-It denies having contacts with New York or with Standard sufficient to confer personal jurisdiction over it.

*Personal Jurisdiction*

█ Personal jurisdiction over a defendant in a diversity action is determined by reference to the law of the jurisdiction in which the district court sits. *United States v. First National City Bank*, 379 U.S. 378, 381–82, 85 S.Ct. 528, 530–31, 13 L.Ed.2d 365 (1965); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); *Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 223 (2d Cir.1963) (en banc). Standard thus bases its assertion of this court's personal jurisdiction over Bag-It on N.Y. C.P.L.R. §§ 301–302 (McKinney 1972 & supp. 1986), alleging that Bag-It both "does business" and "transacts business" in New York. "[U]ntil an evidentiary hearing is held, a plaintiff can defeat a motion to dismiss on the basis of lack of personal jurisdiction by making 'only a prima facie showing of jurisdiction through its own affidavits and supporting materials[,] ... notwithstanding any controverting presentation by the moving party.'" *Dai Nippon v. Melrose*, 113 F.R.D. 540 (S.D.N.Y.1986) (quoting *Marine Midland Bank, N.A.v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Hoffritz For Cutlery v. Amajac, Ltd.*, 763 F.2d at 57.

*"Doing Business"*

Section 301 provides: "A court may exercise jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y.C.P.L.R. § 301 (McKinney 1972). This section keeps alive earlier New York case law:

which provided that a corporation is "doing business" and is therefore "present" in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to New York contacts, if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity."

*Hoffritz For Cutlery v. Amajac, Ltd.*, 763 F.2d at 58 (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917)).

In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), with regard to the constitutionality of state long-arm statutes the Supreme Court held:

[T]he application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.

*Id.* at 253, 78 S.Ct. at 1240 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945)). The New York courts have adopted the purposeful availment theory as an important factor in their evaluations of non-resident defendants' business activities in New York for the purposes of both § 301 and § 302. *Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951, 995–98 (2d Cir.1967); *Longines-Wittnauer Watch Co. v. Barnes Reinecke, Inc.*, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 19, 209 N.E.2d 68, 75, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

The "doing business" test is a practical one. Factors include whether the defendant maintains offices or a permanent locale from which to work in New York, has employees present in New York, a New York bank account, and whether it carries on activities in New York with permanence, continuity, and systematic regularity. *Hoffritz for Cutlery v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir.1985). However, "[no] precise test exists" and that "[e]ach case must

depend upon its own facts." *Manchester Modes, Inc. v. Lilli Ann Corp.*, 306 F. Supp. 622, 624 (S.D.N.Y.1969). "The court must look to the cumulative significance of all these activities in order to decide the question." *Potter's Photographic Applications Co. v. Ealing Corp.*, 292 F. Supp. 92, 100 (E.D.N.Y.1968).

In *Meunier v. Stebo, Inc.*, 38 A.D.2d 590, 328 N.Y.S.2d 608 (2d Dep't.1971) wrongful death action brought by a New York resident against a Pennsylvania defendant, the court found it had no personal jurisdiction over the non-resident defendant where the defendant operated a dude ranch in Pennsylvania and distributed brochures in New York guaranteeing provision of transportation from a New York railroad station to the ranch, when the injury sued upon occurred at the ranch in Pennsylvania. Other contacts consisted of a direct phone line to an out-of-state corporate office and the periodic sending of employees into New York on business. Explaining its findings, the court referred to the "stringent requirements" of § 301 and emphasized that "[c]ontinuity of action from a permanent locale is essential." *Id.*, 328 N.Y.S.2d at p. 611.

More recently, in an action by a New York corporation against a non-resident defendant for a declaratory judgment on a trademark infringement matter where the trial court had found for the plaintiff, the Second Circuit reversed the decision for lack of personal jurisdiction over the defendant. *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757 (2d Cir.1983). In *Beacon Enterprises*, the defendant had shipped an unspecified number of goods into New York and had written a cease and desist letter to the plaintiff. The court held that "[t]he shipment of goods into New York does not ipso facto constitute 'doing business.'" *Id.* at 763 (citing *Kramer v. Vogl*, 17 N.Y.2d 27, 30–32, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966) (mere shipment of goods into New York insufficient to meet lesser standard of "transacting business" under § 302(a)(1))). The court elaborated: "To sustain personal jurisdiction, New York courts 'require substantial solicitation that is carried on with a considerable measure of continuity and from a permanent locale within the state.'" *Id.* at 763, (quoting *Stark Carpet Corp. v. M–Geough Robinson, Inc.*, 481 F.Supp. 499, 505 (S.D.N.Y. 1980)).

In a still more recent case, *Hoffritz For Cutlery v. Amajac*, 763 F.2d 55 (2d Cir. 1985), the plaintiff sued a non-resident defendant for breach of a franchise agreement. The court held that where the defendant had no office in New York, did not solicit business in the state, and had no bank accounts or other property or employees in the state, the defendant was not "doing business" in New York. *Id.* at 58.

■ According to an affidavit submitted by Bag-It, Bag-It is not licensed to do business in New York and has no licenses or permits under New York law, has sent no employees to New York to transact business, has no agents, employees, representatives or independent contractors in New York, maintains no office or business records in New York, has no New York bank account, phone number or listing, and undertakes no direct or indirect advertising or promotion of self or services in any New York media. Standard controverts none of this, and fails in its own submissions to make a *prima facie* showing of Bag-It's "doing business" in New York. The affidavit that it submitted to establish § 301 jurisdiction lacks a sufficient degree of detail, is entirely hearsay, and puts forth legal conclusions rather than competent facts.

### *"Transacted Business"*

New York's long-arm statute allows *in personam* jurisdiction over a nondomiciliary defendant as to a cause of action which arises out of business transacted by the defendant in New York:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state . . .

N.Y.C.P.L.R. § 302(a)(1).

In *Hoffritz For Cutlery v. Amajac*, 763 F.2d 55, 58 (2d Cir.1985), the court held that "[t]he showing necessary for a finding that defendant 'transacted business' . . . is considerably less than that needed to establish defendant's 'doing business'. . . ." Nevertheless, in setting aside the default judgment against Bag-It, this court observed, "Long though it may be, the reach of New York's 'longarm' statute, . . . 'does have its limits.'" *Standard Enterprises Inc. v. Bag-It, Inc.*, 115 F.R.D. 38, 41 (S.D.N.Y.1987) (quoting *American Contract Designers, Inc. v. Cliffside, Inc.*, 458 F.Supp. 735, 739 (S.D.N.Y.1978)).

The relevant contacts between Bag-It and New York with regard to § 302(a)(1), that is, those activities out of which Standard's cause of action arises, consist of three invoices from Standard to Bag-It, the 800–number toll-free telephone calls made by Bag-It to Standard, and the undated, three and a half line written correspondence from Bag-It to Jonas Ameer, Standard's sales manager.

Interstate telephone contacts do not generally have any great significance in § 302(a)(1) analyses. In *Xedit Corp. v. Harvel Industries Corp.*, 456 F.Supp. 725 (S.D.N.Y.1978), the court having approved jurisdiction on the basis of an agent of defendant having entered the forum, and having met and discussed business with plaintiff, specifically explained that particular telephone contacts at issue did *not* constitute grounds for jurisdiction in New York: "Under New York law, interstate negotiations by telephone are not contacts that subject a defendant to jurisdiction. . . ." *Id.* at 728.[2] In an action by a New York brokerage firm against an out-of-state customer where the defendant moved to transfer the case for lack of personal jurisdiction, the court granted the transfer, finding that business conducted

by lengthy collect telephone calls to the New York firm did not meet the N.Y.C.P.L.R. § 302(a)(1) transacting business test. *Helfer Commodities Corp. v. Pellegrino*, 390 F.Supp. 520, 521 (S.D.N.Y.1975). Here, the 800 number toll-free calls, whether to place orders as Standard suggests, or to discuss delivery delays on orders placed by Bag-it with Pine Associates, as Bag-It alleges, cannot support a finding of transacting business sufficient to satisfy N.Y.C.P.L.R. § 302(a)(1).

On the basis of the assumption that placing orders (by telephone or otherwise) often generates invoices for the material ordered, and given that the cases discussed granted no attention to the existence of invoices, the invoices have little import either of their own or in conjunction with telephone orders. As concerns the "correspondence," an undated, three and one-half line letter, of ambiguous relevance—not clearly arising out of the cause of action upon which Standard bases this suit—can hardly satisfy even the most lenient "transacting business" test, nor can it, as such weak evidence, contribute any significant weight to the other contacts at issue.

The 800 number toll-free phone calls, single written communication, the three invoices, individually or any combination of the separate contacts all fail to create an adequate basis for *in personam* jurisdiction according to New York's long-arm statute. Although it is well-established "that it is the nature and quality, and not the amount of New York contacts which determine the issue; and . . . even an isolated contact, if meaningful enough, is sufficient to confer jurisdiction [pursuant to N.Y.C.P.L.R. § 302(a)(1)]," *Development Direction, Inc. v. Zachary*, 430 F.Supp. 783, 785 (S.D.N.Y.1976) (brief New York visits constituted essential and critical stages in transaction in question and therefore constituted activity sufficient to meet the transacting business standard), the contacts in issue lack the requisite "nature and quality," that is, the meaning and purpose

---

2. In *Parke-Bernet Galleries v. Franklyn*, 26 N.Y. 2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), the court held that there was jurisdiction over a nonresident defendant who participated in a New York auction by telephone. The court carefully distinguished the "active participation in the bidding" in its case from the "simple placing of an order by telephone."

necessary to allow the exercise of jurisdiction over Bag-It.

*Conclusion*

For the foregoing reason, the complaint is dismissed for lack of jurisdiction.

IT IS SO ORDERED.