**ALEXANDER & ALEXANDER, INC., Plaintiff,**

v.

**DONALD F. MULDOON & CO., Miro & Associates Risk Management, Inc. and Carlos Miro, Defendants.**

No. 86 Civ. 6568 (MGC).

United States District Court, S.D. New York.

March 30, 1988.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, by James M. Kaplan and Pamela E. Kulsrud, for plaintiff.

Shea & Gould, New York City, Maloney & Smith, Dallas, Tex., by Martin I. Shelton, Charles H. Smith and John Moore, for defendant Miro & Associates Risk Management, Inc.

Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, New York City, by Daniel J. Cooper and Sara Z. Schepps, for defendant Donald F. Muldoon & Co.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Defendant Miro & Associates Risk Management, Inc. ("Miro") moves to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. Miro moves alternatively, and defendant Donald F. Muldoon & Co. ("Muldoon") also moves, to transfer this action to the United States District Court for the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). For the reasons discussed below, Muldoon's transfer motion is denied, and plaintiff and Miro are directed to make further submissions concerning the propriety of a severance and transfer of the action as against Miro.

## PARTIES

Plaintiff Alexander & Alexander, Inc. ("Alexander") is a Maryland corporation with its principal place of business in Baltimore, Maryland. Muldoon is a New York corporation with its principal place of business in New York City. Miro is a Texas corporation with its principal place of business in Dallas, Texas. Carlos Miro, a citizen of Texas, is the principal of Miro. Although named as a defendant in the complaint, he has not been served with process in this case.

## FACTUAL BACKGROUND

Alexander is an insurance broker which placed insurance coverage for Wal–Mart Stores, Inc. ("Wal–Mart") with Transit Casualty Company ("Transit") through Miro, Carlos Miro and Muldoon. Muldoon, Transit's managing general agent, had the power to appoint sub-agents to act in Transit's behalf. Under this authority, Muldoon, as agent for Transit, appointed Miro as a subagent of Transit, and authorized Miro to solicit and issue policies of insurance on behalf of Transit. Miro and Muldoon memorialized this appointment by entering into a "Managing Agency Agreement," which was drafted, executed and mailed by Muldoon in New York, and executed by Carlos Miro for Miro in Dallas. Alexander was not a party to the Managing Agency Agreement, and apparently has no contractual relationship with either Miro or Muldoon.

In this action, Alexander seeks indemnification or contribution from defendants for any damages for which Alexander might be held liable to Wal–Mart or Transit in an action recently tried in the United States District Court for the Western District of Arkansas.[1] Alexander also seeks compensatory and punitive damages for defendants' negligence in the execution of their duties as agents of Transit. In addition, Alexander sues Miro and Carlos Miro for alleged misrepresentations to Alexander concerning Wal–Mart's insurance coverage

—specifically, alleged misstatements that Miro would make and, later, that it had made all filings necessary to comply with various state workers' compensation insurance laws. Alexander's claims are based on Miro's alleged failure to make these filings, Miro's alleged misrepresentations concerning that failure, and Muldoon's alleged failure adequately to supervise Miro.

In a related action, now pending in the United States District Court for the Northern District of Texas, Dallas Division, Transit is seeking damages from Miro, Muldoon and others for alleged improprieties in connection with insurance placements for Wal–Mart. Miro has filed a third-party complaint in that action alleging that Alexsis, Inc., a subsidiary of Alexander, engaged in wrongful conduct, including misrepresentations concerning the claims and reserves of Wal–Mart upon which Miro relied in evaluating the Wal–Mart risk.

## DISCUSSION

### I.  *The Motions to Transfer*

■ A district court has the power to transfer a case to another judicial district pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) whether or not the transferor court has personal jurisdiction over the defendants, *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir.1978), or venue is proper, *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Therefore, where motions to dismiss for lack of personal jurisdiction and venue are joined with a motion to transfer, the transfer motion may be considered first. *See Matra et Manurhin v. International Armament Co.*, 628 F.Supp. 1532, 1534 & n. 2 (S.D.N.Y.1986). In this case, since there are strong considerations favoring transfer, I turn immediately to the transfer motions.

### A.  Factors Favoring Transfer

■ The factors to be weighed in considering a motion to transfer include the con-

---

1. The Arkansas District Court recently declined to award any judgment against Alexander. *See Wal–Mart Stores, Inc. v. Crist*, 664 F.Supp. 1242 (W.D.Ark.1987). The parties have not advised whether the Arkansas action is being appealed.

venience to the parties and witnesses and the interest of justice. *See* 28 U.S.C. § 1404. The burden is on defendants to establish that the plaintiff's choice of forum should be overturned. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). A plaintiff's choice of forum is entitled to substantial weight. *A. Olinick & Sons v. Dempster Bros. Inc.*, 365 F.2d 439, 444 (2d Cir. 1966). However, that weight may be diminished where, as here, a plaintiff brings suit outside its home forum. *Savin v. CSX Corp.*, 657 F.Supp. 1210, 1213 (S.D.N.Y. 1987), quoting *Pesin v. Goldman, Sachs & Co.*, 397 F.Supp. 392, 394 (S.D.N.Y.1975). In this case, the factors enumerated in § 1404 support a transfer to Texas, and the deference due the plaintiff's choice of forum does not outweigh these considerations.

■ The convenience of the parties would be greater, on balance, were this case to proceed in Texas rather than in New York. Miro's principal place of business is Dallas. Although Muldoon's principal place of business is New York, in bringing its transfer motion Muldoon has made clear its preference for a Texas forum, where this action could be consolidated with or at least proceed side by side with the related Texas action. Alexander's argument that a New York forum would be more convenient for Muldoon is not persuasive in the face of Muldoon's express rejection of a New York forum. *See Savin*, 657 F.Supp. at 1213. As to Alexander, whose principal place of business is Baltimore, a Dallas forum may be more distant than a New York forum. This inconvenience may be somewhat abated by the pendency of the related litigation in Texas involving Alexander's subsidiary. At any rate, any increase in inconvenience to Alexander is outweighed by the added convenience of the Texas forum to Muldoon and Miro.

The convenience of witnesses also points toward a transfer of this action. Alexander has not named a single witness for whom New York would be a more conve-

nient forum than Texas. Muldoon, on the other hand, has listed three trial witnesses who are located in or near the Northern District of Texas. According to Muldoon, these witnesses—Carlos Miro, Sheldon Irion and Doug Hale—would testify about Muldoon's lack of involvement or knowledge of the Wal–Mart transaction. It is undisputed that this testimony would be important to Muldoon's defense of this action. And Carlos Miro, who represented Miro in many of its contacts with the other parties to this lawsuit, is a Texas resident.

The existence of the related action in the Northern District of Texas provides the most compelling support for finding that a transfer of this case is in the interest of justice. The related action involves claims arising from the very same insurance placement. Miro, Muldoon and a subsidiary of Alexander are all parties to that action.

> There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be concluded more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.

*Wyndham Associates v. Bintliff*, 398 F.2d 614, 619 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); *see also Savin*, 657 F.Supp. at 1214. For these reasons, it is in the interest of justice to transfer this action to Texas. Alexander's argument that it would be unfair and burdensome to add its claims to the "morass of litigation" pending in Texas, Plaintiff's Brief at 17, runs directly counter to the well-founded policy expressed in *Wyndham Associates* of trying related claims together.

### B. The *Hoffman v. Blaski* Test

28 U.S.C. §§ 1404(a) and 1406(a) provide that a district court may transfer an action only to a district or division where the action might have been brought initially. Venue must be proper and the defendants must be amenable to process in the transferee forum. These requirements cannot be waived by the party seeking the trans-

fer. *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). Since Miro and Muldoon are the proponents of the transfer motions, they bear the burden of establishing that personal jurisdiction and venue are proper as to them in Texas. *In re Mid–Atlantic Toyota Antitrust Litigation,* 1982–1 Trade Cases (CCH) ¶ 64,494, at 72,748 (D.Md.1982).[2]

Miro, which is incorporated in Texas and has its principal place of business in Dallas, is clearly subject to personal jurisdiction in Texas, as is Carlos Miro, who is a citizen of Texas. Venue is also clearly proper as to those defendants, pursuant to 28 U.S.C. §§ 1391(a), (c). But the moving parties have not established that personal jurisdiction lies over Muldoon in the proposed transferee district.

Personal jurisdiction over a defendant in a diversity action is determined by the law of the state in which the court sits. *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). Muldoon contends that jurisdiction over it would be proper in Texas pursuant to Tex.Civ.Prac. & Rem. Code § 17.042(1), a section of the Texas long-arm statute, which provides:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident ... contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state....

Muldoon asserts that it satisfied this provision by entering the Managing Agency Agreement with Miro, a Texas resident.

The Texas long-arm statute has been interpreted to extend to the constitutional due process limits established by the Fourteenth Amendment. *Hall v. Helicopteros Nacionales de Colombia, S.A. (Helicol),* 638 S.W.2d 870 (Tex.1982), *rev'd on other grounds,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Nevertheless, where there is a question whether one of the particular prongs of the long-arm statute applies to a defendant, Texas courts address the applicability of that statute before considering whether the exercise of personal jurisdiction comports with constitutional due process requirements. *See Runnels v. Firestone,* 746 S.W.2d 845 (Tex. Ct.App. 14th Dist.1988); *Ross F. Meriwether & Associates, Inc. v. Aulbach,* 686 S.W. 2d 730 (Tex.Ct.App. 4th Dist.1985). Applicable to both the statutory and the constitutional inquiry is the first prong of a three-prong test used by Texas courts to determine whether jurisdiction may be exercised over a non-resident defendant having only a single or very few contacts with the state. That prong requires that "the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state...." *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 664 (Tex.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988), *quoting O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex. 1966).

■ The Managing Agency Agreement is a contract between Transit and Miro. Although it is signed by Muldoon, both that signature and the first two paragraphs of the agreement establish that Muldoon entered the agreement solely "as agents for Transit." There is nothing to indicate that Muldoon acted as anything other than agent for Transit in entering the agreement, nor has Muldoon argued that it did. *See* Supplemental Affidavit of Daniel F. Maher, Jr., general counsel for Muldoon, dated November 19, 1987, at ¶ 3.

---

**2.** The requirements of *Hoffman v. Blaski* may not be evaded in this case by a finding that Alexander could have brought its claims as a counterclaim in the Texas action. In *A.J. Industries, Inc. v. U.S. District Court,* 503 F.2d 384 (9th Cir.1974), the Ninth Circuit held that where a plaintiff could have brought his action as a counterclaim in a pending action in the transferee district, the requirements of § 1404(a) were satisfied, even if one of the defendants was not amenable to process in the transferee district. But *A.J. Industries* has been narrowly read. *See American Tel. and Tel. Co. v. Milgo Electronic Corp.,* 428 F.Supp. 50 (S.D.N.Y.1977). It would take an expansive reading indeed to stretch *A.J. Industries* to fit the facts of this case. Alexander is not a party to the Texas action; its subsidiary Alexsis is. Muldoon and Miro are not plaintiffs in the Texas action; they are third-party defendants.

When a non-resident party, acting solely as an agent for a disclosed principal, enters a contract with a Texas resident, under Texas law the non-resident party has neither done some act nor consummated some transaction in Texas as required by the first prong of the test used to determine the applicability of the Texas long-arm statute, even if the party entered the contract in the State of Texas. *Aulbach*, 686 S.W. 2d at 731. *Aulbach* was a suit against a non-resident corporation and its president to recover on a contract. The corporate president sought dismissal on the ground that personal jurisdiction over him was lacking under a section of the Texas long-arm statute that has been recodified as section 17.042(1). Although the corporate president had negotiated the contract with the plaintiff in Texas, he did so only in his corporate and not in his personal capacity. 686 S.W.2d at 732. The Texas court held that the corporate president, because he acted as an agent only, had not "contract[ed] ... with a Texas resident," as required by the long-arm statute.

> An agent is not a party to, nor individually liable on, a contract he enters into on behalf of his principal. It is the principal who enters into the contract. When an agent arrives in Texas to negotiate a contract for his principal, only the principal does business in the state. The agent, having entered into no contract, has done no business in Texas, and, therefore, has done no act nor has he consummated a transaction in Texas.

686 S.W.2d at 731 (citations omitted.)

The *Aulbach* Court did not ground its decision on the "fiduciary shield" doctrine. *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir.1985) (fiduciary shield "holds that an *individual's* transaction of business within the state solely *as a corporate officer* does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation"

(emphasis added)). There is nothing in *Aulbach* to suggest that its holding would be any different were the agent a third-party corporation rather than an individual corporate employee.[3]

Thus, Alexander cannot establish jurisdiction over Muldoon under section 17.-042(1) on the basis of a contract which Muldoon entered with Miro solely as agent for Transit. Since Muldoon points to no other contacts it has had with Texas, and to no basis for jurisdiction in Texas other than section 17.042(1), Muldoon's motion to transfer this case to Texas is denied.

28 U.S.C. §§ 1404(a) and 1406 permit the transfer only of entire actions, not partial ones. *See Wyndham Associates v. Bintliff*, 398 F.2d 614, 618 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). Nevertheless,

> where the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants, at least in cases where, as here, the defendants as to whom venue would not be proper in the transferee district are alleged to be only indirectly connected to the manipulations which form the main subject matter of the action.

*Bintliff*, 398 F.2d at 618. Since the parties have not addressed the issue of whether this test is met in the case of Alexander's action against Miro, I will not decide whether severance and transfer is warranted until after Alexander and Miro have had the opportunity to make further submissions addressing this question.

## II. *Personal Jurisdiction over Miro*

Miro has also moved pursuant to Fed.R. Civ.P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. The plaintiff bears the burden of establishing the court's

---

**3.** Although the distinction between agent and principal may have been somewhat blurred in *Beechem v. Pippin*, 686 S.W.2d 356 (Tex.Ct.App. 3rd Dist.1985), the decision in that case does not make clear whether the individual defendant engaged in various activities solely as agent or on his own behalf as well, *see* 686 S.W.2d at 363. In addition, jurisdiction over the individual defendant was proper because he owned both real and personal property in Texas, *id.*, a fact not present in Muldoon's case.

personal jurisdiction over a defendant. *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). But where a motion brought under Rule 12(b)(2) is decided without an evidentiary hearing, the plaintiff need make only a *prima facie* showing that jurisdiction exists. *Id.* All pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in its favor. *Id.; Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

Alexander contends that jurisdiction exists over Miro under New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302(a)(1). I address these two alternate bases of jurisdiction in turn.

### A. CPLR § 301

CPLR § 301 provides:

A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.

Under this general jurisdictional statute, a foreign corporation "does business" in New York and may be sued here on any cause of action, whether or not related to its New York contacts, if it "engages in a continuous and systematic course of doing business in New York." *Hoffritz,* 763 F.2d at 58. The non-resident must do business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Id.,* quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915 (1917).

■ In support of its contention that section 301 provides jurisdiction over Miro, Alexander alleges that the vast bulk of Miro's business was that which it generated for Transit. It claims that Miro was in almost daily telephone and mail contact with Muldoon to discuss these insurance sales, that Miro sent copies to Muldoon in New York of all binders, policies and endorsements that it generated for Transit, and that Miro visited Muldoon's offices in New York on a monthly basis to discuss business matters.

A defendant's attendance at business meetings in New York and frequent correspondence with a New York company are not sufficient to establish jurisdiction over it under section 301. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd., supra.*

The New York courts, in applying the pragmatic test for section 301 jurisdiction, have focused on factors including: the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state.

*Id.,* 763 F.2d at 58. Alexander has pointed to none of these elements to show that personal jurisdiction exists over Miro under section 301. Nor does *Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E. 2d 692 (1982), on which Alexander relies, lead to a conclusion that section 301 is satisfied here. *Laufer* did involve a defendant that, like Miro, was not licensed to do business in New York, and had no New York office, telephone or bank account. However, the court's finding that jurisdiction existed under section 301 was based on the active solicitation and servicing of New York accounts by the defendant, a sales agent for a furniture manufacturer. Alexander has pointed to no such solicitation in New York by Miro. After construing the facts in the record most favorably to Alexander, I find that it has failed to make a *prima facie* showing that personal jurisdiction exists over Miro under section 301.

### B. CPLR § 302(a)(1)

■ CPLR § 302(a)(1), part of the New York long-arm jurisdiction statute, provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state....

"Transacting business" within the meaning of § 302(a)(1) requires a showing of fewer contacts with New York than is required to establish "doing business" under § 301. *Hoffritz,* 763 F.2d at 58–59; *Bea-*

con Enterprises, Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir.1983). Nevertheless, the non-domiciliary defendant must have invoked the benefits and protections of New York law by purposefully availing itself of the privilege of conducting activities here. CutCo, 806 F.2d at 365. In addition, the cause of action must arise out of the defendant's business activities in New York, id., which means that there must be a " 'substantial relationship' between those activities and the transaction out of which the cause of action arose." Talbot v. Johnson Newspaper Corp., 71 N.Y.2d 827, 829, 527 N.Y.S.2d 729, 730, 522 N.E.2d 1027, 1028 (1988), quoting McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981); see also Menzies, 715 F.2d at 764–65; Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 321–22 (2d Cir.1964); Auto Sunroof of Larchmont, Inc. v. American Sunroof Corp., 639 F.Supp. 1492, 1496–97 (S.D.N.Y. 1986); Faherty v. Fender, 572 F.Supp. 142, 145–48 (S.D.N.Y.1983); Xedit Corp. v. Harvel Industries Corp., 456 F.Supp. 725 (S.D.N.Y.1978).

In arguing that jurisdiction exists under § 302(a)(1), Alexander points to the same extensive telephone and mail contacts between Miro and Muldoon in New York, and to the same approximately monthly meetings between Miro and Muldoon in New York. Alexander relies in particular on a meeting held in New York in January 1985 between representatives of Wal–Mart, Alexander, Transit, Muldoon and Miro, at which disagreements over the Wal–Mart insurance coverage were voiced, and at which Transit demanded $19 million in additional premiums from Wal–Mart.

Miro's attendance at business meetings in New York, in combination with its other New York contacts, is sufficient for a prima facie showing that Miro transacted business in New York within the meaning of § 302(a)(1). See Xedit Corp. v. Harvel Industries Corp., 456 F.Supp. at 728; see also CutCo, 806 F.2d at 367–68; Hoffritz for Cutlery, Inc. v. Amajac, Ltd., supra. But Alexander has not met the second requirement under § 302(a)(1)—that the claims against Miro arise out of Miro's transactions of business in New York.

Alexander has characterized its lawsuit, which sounds only in tort and not in contract, as follows:

> The essence of [Alexander's] claim is that, despite representations to the contrary by Miro ... there were not in place certain state insurance department filings which may have been necessary to validate the Wal–Mart policies. It was Miro and Muldoon's duty to assure that such filings were made[,] and their failure to do so occurred in New York.

Alexander Brief at 13. Alexander contends that the transactions that gave rise to its claim against Miro occurred when, "[d]uring numerous meetings in New York, Miro[] and Muldoon discussed Miro's underwriting practices, reinsurance, letters of credit, and all other aspects of their insurance business." Id. Alexander has pointed to no specific connection between any of these meetings and Miro's failure to make state insurance filings, or between the meetings and Miro's alleged misrepresentations concerning its failure to file. Nor has Alexander established any substantial relationship between the January 1985 meeting and the alleged misrepresentations. Alexander has not suggested that any misrepresentation took place at that meeting. Miro argues, and Alexander has not contested, that any misrepresentations would necessarily have been made long before the January 1985 meeting. Alexander's vague allegations when construed in the light most favorable to it do not amount to a prima facie showing that Alexander's claim against Miro arose from Miro's contacts with New York.

Alexander has not met its very limited burden of making a prima facie showing that personal jurisdiction exists over Miro under New York law. Therefore, if the further submissions of the parties show that severance and transfer of Alexander's claims against Miro to the Northern District of Texas are not warranted, this action will be dismissed as against Miro for lack of personal jurisdiction.

**354**

## CONCLUSION

Muldoon's motion to transfer this case to the Northern District of Texas is denied. Alexander and Miro are directed either to agree between themselves or make further submissions within 20 days of the date of this opinion concerning the propriety of severing the action against Miro and transferring it to Texas. If severance and transfer are not appropriate, the action against Miro will be dismissed pursuant to Fed.R.Civ.P. 12(b)(2) for want of personal jurisdiction.[4]

SO ORDERED.

---

4. There is no need for me to address Miro's motion in the alternative under Fed.R.Civ.P. 12(b)(3) to dismiss for improper venue, and therefore I do not do so.