The PERFUMER'S WORKSHOP,
LTD., Plaintiff,

v.

ROURE BERTRAND du PONT, INC.,
Roure Bertrand du Pont, S.A. and F.
Hoffman–La Roche & Co. Limited
Company, Defendants.

No. 88 Civ. 1556 (KTD).

United States District Court,
S.D. New York.

March 19, 1990.

Kleinberg, Kaplan, Wolff & Cohen, P.C., Norris D. Wolff, Ronald D. Hariri, of counsel, New York City, for plaintiff.

Kelley Drye & Warren, Kevin J. Walsh, of counsel, New York City, for defendants.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Perfumer's Workshop, Ltd. ("Perfumer's"), seeks compensatory and punitive damages for alleged violations of various federal and state antitrust laws, and for state breach of contract, common law fraud, and negligence claims. Defendants Roure Bertrand du Pont, Inc. ("Roure"), Roure Bertrand du Pont, S.A. ("Roure–France"),[1] and F. Hoffman–La Roche & Co. Limited Company ("Hoffman–La Roche") move pursuant to Fed.R.Civ.P. 12(b)(2–5)[2] to dismiss for lack of personal jurisdiction, improper service of process, and improper venue. Alternatively, defendants move, under Fed.R.Civ.P. 12(b)(6), to dismiss the federal and state antitrust and fraud causes of action. Roure is the only defendant that concedes jurisdiction. Subject matter jurisdiction rests on federal antitrust claims, pendent and diversity jurisdiction.

## FACTS

Perfumer's, a New York corporation, sells and produces perfume fragrances and related products. Amended Complaint ¶ 4. Roure, a New Jersey corporation, is a perfume house, supplying and manufacturing concentrates, essential oils, and other chemicals for perfumes and cosmetics. Amended Complaint ¶ 5. Roure–France is a French corporation that, together with Roure, participates in developing and producing prestige perfume products marketed world-wide. Amended Complaint ¶ 5. Hoffman–La Roche, the Swiss parent corporation of Roure and Roure–France, is engaged in the manufacture and sale of, among other things, pharmaceuticals, vita-

---

1. Defendant's responsive pleadings refer to Roure Bertrand Du Pont, S.A. as "Roure S.A."

2. The consideration of material beyond that contained in the pleadings does not convert a motion under Fed.R.Civ.P. 12(b)(2) into a motion for summary judgment. *Attwell v. LaSalle National Bank*, 607 F.2d 1157 (5th Cir.1979), *cert. denied*, 445 U.S. 954, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980). Generally, a court may properly rely on affidavits and depositions to establish jurisdictional facts in determining whether the plaintiff has sustained its burden on a jurisdictional question. *Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir.1981).

mins, fragrance products, and chemicals used in perfume production. Amended Complaint ¶¶ 6–7.

It is uncontested that a perfume house that creates or develops a perfume fragrance formula owns it as a trade secret according to industry custom. Amended Complaint ¶ 14. In April 1985, Roure developed a perfume fragrance for Perfumer's under the code name and number "Neroli Nights R6068," which Roure protected as a trade secret. Amended Complaint ¶¶ 38–40. Pursuant to agreement Perfumer's purchased and distributed 1,200 one-ounce samples of the secret formula for test marketing in December 1985. By late winter 1986, Perfumer's purchased the fragrance in varying concentrations to create cologne, eau de toilette, and eau de parfum. Touted as a "major new prestige fine fragrance," the fragrance was to be sold under Perfumer's trademark SAMBA. Amended Complaint ¶¶ 39–40. By spring 1987, Perfumer's undertook a major marketing and advertising campaign for the SAMBA fragrance both domestically and abroad. Amended Complaint ¶¶ 46–48.

Perfumer's allegedly detected an "off odor" in the SAMBA fragrance in post-promotional shipments of the product. In addition, Perfumer's determined that the scent's endurance on the skin of the 18% solution eau de toilette pre-production samples was inadequate. Roure proposed increasing the eau de toilette solution from 18% to 22% and Perfumer's agreed; Roure supposedly made no offer to remedy the "off odor." Amended Complaint ¶ 59.

Perfumer's claims, inter alia, that Roure breached its obligations under the supply agreement because all post-promotional shipments of the SAMBA fragrance failed to contain the preservative, BHT, at the agreed upon level of 0.05% of the essential oil. Perfumer's objected to the use of the preservative DL-alpha tocopherol in lieu of BHT, which it claimed to be the cause of the fragrance's premature destabilization, resulting in the drastic and unpleasant change in the scent. In addition, Perfumer's claims that the raw materials utilized were not of like grade and quality as the raw materials used in the "Neroli Nights" formula, test marketed in 1985. After refusing to pay Roure under the supply agreement, Perfumer's rejected all post-promotional SAMBA shipments. Perfumer's then engaged Roure–France's expertise to try and remedy SAMBA's "off odor." Nonetheless, as a result of Perfumer's failure to tender payment to Roure, Roure filed an action in New Jersey state court. That action has since been removed to New Jersey's Federal District Court and this court has not been advised as to the status of that action. Roure's Memorandum of Law in Support of Motion To Dismiss, at 3.

## DISCUSSION

### I. *In Personam Jurisdiction*

■ Both Hoffman–La Roche and Roure–France contest the assertion of jurisdiction over them in this forum. Personal jurisdiction "is a composite notion of two separate ideas: amenability to jurisdiction, or predicate, and notice to the defendant through valid service of process." *Soltex Polymer Corp. v. Fortex Industries, Inc.*, 590 F.Supp. 1453, 1456 (E.D.N.Y.1984), *aff'd*, 832 F.2d 1325 (2d Cir.1987).

### A. Hoffman–La Roche

■ The applicable law of jurisdiction in a diversity action is the law of the state in which the district court sits. *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). Whether this court may assert jurisdiction over Hoffman–La Roche as Roure's foreign parent turns on whether a prima facie showing is made that Hoffman–La Roche had sufficient contacts with New York such that traditional notions of fair play are not offended. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Marine Midland, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Pursuant to New York law, a court is permitted to exercise jurisdiction over a corporate entity on the basis of a single purposeful transaction of business conducted by it in New York. N.Y. Civ. Prac.L. & R. § 302(a)(1) (McKinney 1983 & Supp.1990). Thus, if jurisdiction is predi-

cated upon a New York-based business transaction, an articulable nexus must exist between business transacted by Hoffman–La Roche in-state and the cause of action sued upon here. *Alexander & Alexander v. Donald F. Muldoon & Co.*, 685 F.Supp. 346 (S.D.N.Y.1986).

■ As a threshold matter, nothing in the record before me indicates that Hoffman–La Roche has either conducted business in New York or facilitated any transaction between Perfumer's and Roure in-state. Moreover, the nexus that Perfumer's draws upon in their pleadings and supportive documentation is a tenuous one, reliant on magazine articles and broadly ambiguous statements which suggest only that Hoffman–La Roche conducts business worldwide. The Supreme Court has held that merely entering products into the stream of commerce is an insufficient jurisdictional predicate. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 110, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (citing *World–Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Although Hoffman–La Roche has many subsidiaries and its name is world renowned for such items as cosmetics and perfumes, business activity of this sort is nonetheless insufficient evidence of purposeful contacts with New York for the purposes of this action.

Nor can this court assert jurisdiction over Hoffman–La Roche simply because it is the parent of a United States subsidiary. Only where a parent corporation asserts such extensive control over its subsidiary as to be deemed the subsidiary's alter-ego, can the parent-subsidiary relationship be a sufficient jurisdictional predicate. *See Volkswagenwerk Atkengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984) ("identical ownership interests must exist before one corporation can be considered a department of another corporation for jurisdictional purposes"). Parent corporations that observe "a strict formal separation" from their subsidiaries and that derive no direct benefit therefrom are not subject to in personam jurisdiction. *Bulova Watch Co., Inc. v. K. Hattori &*

*Co., Ltd.*, 508 F.Supp. 1322, 1342 (E.D.N.Y. 1981) (Weinstein, J.). Because Hoffman–La Roche neither supplied ingredients for the SAMBA perfume nor asserted control over or derived financial benefit with regard to SAMBA from Roure or Roure–France, no viable jurisdictional predicate exists over Hoffman–La Roche. *Id.*

Alternatively, Perfumer's contends that Hoffman–La Roche is subject to New York's longarm jurisdiction based on its allegedly tortious behavior occurring outside New York that caused Perfumer's harm in New York. N.Y.Civ.Pract. L. & R. § 302(a)(3) (McKinney's 1983 & Supp.1990). Perfumer's, however, fails to show either that Hoffman–La Roche had purposeful contacts within New York or was a party to the SAMBA deal such that any torts arising therefrom could be traced to Hoffman–La Roche. Any purported tort or fraud arising from Perfumer's contract with Roure therefore remains wholly unrelated to Hoffman–La Roche and cannot form the basis of longarm jurisdiction. *Cf. Cleopatra Kohlique, Inc. v. New High Glass, Inc.*, 652 F.Supp. 1254 (E.D.N.Y. 1987) (independent tort committed outside New York which causes and can be traced to a harm in New York is a sufficient predicate for longarm jurisdiction.); *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523 (S.D.N.Y.1985). Thus, no jurisdiction can be exercised over Hoffman–La Roche based upon the tort theory of longarm jurisdiction.

**B. Roure–France**

■ It is uncontested that Perfumer's engaged the assistance of Roure–France in order to remedy problems with the SAMBA fragrance after "off odors" were detected, and that subsequent meetings between Perfumer's and Roure–France were conducted in France. Amended Complaint ¶¶ 92–105. Marketing products and establishing channels for providing advice in the forum state, in addition to placing product in the stream of commerce, have been held to indicate "act[s] of the defendant purposefully directed toward the forum State" such that jurisdiction may be conferred. *Asahi Industry Co.*, 480 U.S. at 113, 107

S.Ct. at 1033–34. In addition to acting in an advisory capacity to Perfumer's, Roure–France co-developed the original "Neroli Nights" prototype for SAMBA, which was destined to be developed for production and distribution in the United States by Roure. These are sufficient purposeful acts in New York to confer personal jurisdiction over Roure–France, presuming that sufficient notice and service were made upon Roure–France.

## II. *Service of Process*

 Rule 4(e) of the Federal Rules of Civil Procedure requires that service be made "under the circumstances and in the manner prescribed" by the law of the state in which the forum court is located. *Davis v. Musler*, 713 F.2d 907, 914 (2d Cir.1983). In New York, service of process on a corporation requires that an officer or director of the corporation be present in the forum to accept service of summons on its behalf. N.Y. Civ.Prac.L. & R. §§ 308, 318 (McKinney's 1983 & Supp.1990). Here, Perfumer's merely mailed a certified copy of the summons overseas expecting Roure–France to acknowledge receipt without objection.

Roure–France avers that it does not maintain an office or agents in New York state, and no affidavits of service upon the Secretary of State in Albany appear in Perfumer's papers. And although Roure–France met with and advised Perfumer's after the prototype fragrance was developed, such meetings were conducted in France. Therefore, for the purposes of determining the service issue, Roure–France never voluntarily availed itself of or entered New York in order to accept service as required by New York law. Nor could Roure have properly accepted service on Roure–France's behalf because they were not held out as agents of one another.

Absent domiciliary agents in the forum, leave of court is mandated in order to use substituted service. N.Y.Civ.Prac. L. & R. §§ 308, 313 (McKinney's 1983 & Supp. 1990). Perfumer's failed to seek court assistance in serving process. Indiscriminate use of the mails to effect service abroad does not assure either receipt or sufficient notice of a pending action comporting with fairness and due process. Furthermore, service effected outside the United States on a foreign corporation demands proper service under the constraints of the foreign domiciliary's law, unless that law is inconsistent with requirements of the Hague Convention Treaty. *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *opened for signature* Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 658, 658 U.N.T.S. 163 ("Hague Convention").

France and the United States are participants and signatories of the Hague Convention. The Hague Convention, which takes precedence over inconsistent foreign law, mandates that where service is not or cannot be properly effected on a foreign corporation in accordance with its forum's law, an agent of the state shall be designated by the corporation to receive service of documents. French law requires that service be made by the applicable central authority designated by the French government, or, alternatively, by an authorized bailiff or huissier. Weymuller Affid. ¶ 8. Perfumer's failed to properly serve Roure–France either by French or International law.

As such, I therefore find that service was improper. Because Roure–France correctly preserved its jurisdictional objection, service of summons and complaint on Roure–France is quashed as fatally deficient. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988).

Finally, Perfumer's requests additional discovery regarding the jurisdiction questions. However, "[d]iscovery procedures are appropriate only when there is at least some slight factual indication that a basis for jurisdiction exists." *Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 317–18 (S.D.N.Y. 1986). The discovery rules "are not a hunting license to conjure up a claim that does not exist." *Samuels v. Eleonara Beheer, B.V.*, 500 F.Supp. 1357, 1362 (S.D.N.Y. 1980) (Weinfeld, J.), *aff'd*, 661 F.2d 907 (2d

Cir.1981). The request is therefore denied.[3]

### III. *Substantive Claims*

Because personal jurisdiction cannot be asserted over Hoffman–La Roche and Roure–France, Perfumer's substantive claims relate only to the agreement between Perfumer's and Roure. Perfumer's alleges several claims sounding in federal and state antitrust, conspiracy, fraud, and breach of contract based on Roure's wrongful use of DL–alpha tocopherol, the perfume's malodorous preservative ingredient, rather than BHT.

Perfumer's federal conspiracy and fraud claims are grounded on allegations that Roure, with others, monopolized the use of certain preservatives in the fragrance market in violation of § 2 of the Sherman Act. The Act, in pertinent part, states:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony....

15 U.S.C. § 2 (1980).

Ultimately, to find a § 2 violation it must be determined either that Roure intended to monopolize the DL–alpha tocopherol market or that Roure's acts asserted such sufficient control over DL–alpha tocopherol as to affect its price and/or unreasonably restrict competition in the marketplace for that product. *See Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919 (9th Cir.1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981) (antitrust claims are comprised of three elements: (1) possession of a monopoly in the relevant market; (2) willful maintenance of power over the product; and (3) causal antitrust injury); *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 380, 76 S.Ct. 994, 998–99, 100 L.Ed. 1264 (1956).

■ Perfumer's pleadings in support of its antitrust claims against Roure are sparse. Perfumer's asserting bald allegations that Roure monopolized the preservative market in the perfume industry in fact present no more than a simple breach of contract claim. Specifically, Perfumer's maintains that Roure was motivated to use DL–alpha tocopherol because of an otherwise unexplained market-share or stake that Roure maintained over that product. As such, Perfumer's argues that Roure secretly changed SAMBA's ingredients, instead of using the recipe upon which Perfumer's and Roure had originally agreed, in furtherance of this control over a nebulously defined DL–alpha tocopherol market. *See* Amended Complaint ¶ 21. The pleadings do not indicate, however, that there is a distinct DL–alpha tocopherol market, or that the market price for and availability of DL–alpha tocopherol was adversely affected by Roure's allegedly controlling market share.

Perfumer's further maintains that Roure conspired with its corporate affiliates, Hoffman–La Roche and Roure–France, to monopolize the market for that chemical stabilizer. Amended Complaint ¶ 95. Conspiracy to monopolize a market requires a finding of specific intent to monopolize. *International Railways of Central America v. United Brands Co.*, 532 F.2d 231 (2d Cir.), *cert. denied* 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976). Secretly changing the preservative is insufficient proof that Roure had the requisite intent to take over a significant market share of the DL–alpha tocopherol market.

■ Perfumer's also claims that because of Roure's monopoly power over the trade secret formula, Perfumer's was not able to purchase products derived from the SAMBA standard formula from alternate suppliers. Amended Complaint ¶ 96. However, because Perfumer's accepted that "SAMBA" would be produced by a secret and protected formula, it is precluded from asserting that as a basis to allege violative monopoly power, regardless of whether it was unable to obtain like perfume oils elsewhere. Owning the exclusive recipe for a product, albeit monopolistic, is not neces-

---

**3.** The issue of improper venue over Roure–France and Hoffman–La Roche is mooted because there is no *in personam* jurisdiction over either entity.

sarily violative of the antitrust laws, especially where the parties formally agreed to maintain the integrity of the trade secret formula. *See, e.g., United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. at 382, 76 S.Ct. at 999–1000.

Moreover, that a specific choice of ingredients was made exclusively by Roure is inconclusive that such conduct rises to the "predatory" level which threatens the marketplace as a whole. *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985). Perfumer's argues that it is a violation of the antitrust laws for Roure, as Hoffman–La Roche's subsidiary, to buy raw materials from Hoffman–La Roche and incorporate them into an end product, without resultant antitrust implications. More must be alleged to show some detriment to the marketplace; Perfumer's fails to plead a prima facie case of Sherman Act violations to withstand this motion to dismiss.

■ Additionally, Perfumer's alleges violations of § 3 of the Clayton Act, namely, that Roure had unlawfully tied the SAMBA fragrance with DL-alpha tocopherol preservative. Tying arrangements involve a seller's coercion of a buyer to purchase two distinct products, whereby the buyer seeking to purchase one product is forced by the seller to purchase a second distinct product. 15 U.S.C. § 14 (1980); *Times Picayune Publishing Co. v. United States,* 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); *Unijax, Inc. v. Champion Intern, Inc.,* 683 F.2d 678, 684–85 (2d Cir.1982). Because the amended complaint fails to allege the existence of any coercive tactics perpetrated by Roure, and considering that preservatives are a necessary and integral ingredient of the final perfume product, Perfumer's fails to state a Clayton Act cause of action.

Similarly, Perfumer's claim under New York's Donnelly Act, N.Y.Gen.Bus.L. § 340 (McKinney's 1988), must also fall. To sustain an action under the Donnelly Act, elements similar to a federal antitrust cause of action must be pleaded. For the same reasons that Perfumer's fails to state a federal antitrust claim, its Donnelly Act claims must fall as well. *Id.*

■ Additionally, Perfumer's fails to state a claim sufficient to invoke New York's consumer protection laws. N.Y. Gen.Bus.L. § 349 (McKinney's 1988). New York's Consumer Protection Act is intended as "a strong deterrent against deceptive business practices" which directly affect the consuming public. *See* N.Y.Gen.Bus.L. § 349(a). Although Perfumer's avers that some courts have allowed a private right of action under that statute for corporate claims, such right arises only if the movant demonstrates an injury to the public interest. *See Azby Brokerage v. Allstate Insur. Co.,* 681 F.Supp. 1084 (S.D.N.Y.1988). Perfumer's has not alleged such injury nor do its pleadings demonstrate the requisite impact on consumers. Therefore, Perfumer's Consumer Protection Act claims are dismissed.

■ Perfumer's also alleges a fraud claim based on Roure's failure to tell Perfumer's of its decision to use DL-alpha tocopherol instead of BHT. Rule 9(b) of the Federal Rules of Civil Procedure provides that a complaint charging fraud or mistake must state the circumstances constituting fraud or mistake with particularity. *Luce v. Edelstein,* 802 F.2d 49, 54–55 (2d Cir.1986). The complaint fails to meet this requirement. Even if it did, New York courts have consistently held that a cause of action for fraud cannot be the outgrowth of simple breach of contract claims. *Metropolitan Transportation Auth. v. Triumph Advertising Prod., Inc.,* 116 A.D.2d 526, 497 N.Y.S.2d 673, 675 (1st Dep't 1986). Here, the only alleged misrepresentations involve Roure's failure to produce the SAMBA fragrance in accordance with the original "Neroli Nights" formula. Perfumer's thus cloaks a simple breach of contract claim in broad allegations of fraud. Accordingly, Perfumer's fraud claims are dismissed.[4]

Although the allegations of the complaint must be accepted as true on a Rule 12(b)(6) motion to dismiss, Perfumer's pleadings present only a dispute between a supplier and a purchaser regarding the

---

4. Although Perfumer's alleges entitlement to punitive damages, all of the claims which would

merchantibility of the "SAMBA" fragrance as it was developed pursuant to contract. As such, the only claims that survive this motion to dismiss are negligence, common law and UCC breach of contract claims, and implied warranty of merchantibility claims as alleged against Roure.

For the foregoing reasons, the motion to dismiss is granted as to defendants Hoffman–La Roche and Roure–France and the complaint is dismissed in its entirety as against both. The complaint survives as to counts five, six, seven, nine, ten, twelve, thirteen and fourteen as against Roure only.

SO ORDERED.

have otherwise supported punitive damages have been dismissed. Accordingly, Perfumer's claims for punitive damages are dismissed as well.