**Christopher W. SUTTON, Plaintiff,**

v.

**REHTMEYER DESIGN COMPANY, Carol Rehtmeyer, All Things Equal, Inc., and Eric Poses, Defendants.**

**No. 3:99CV1562 (RNC).**

United States District Court, D. Connecticut.

Aug. 12, 2000.

*RULING AND ORDER*

CHATIGNY, District Judge.

Plaintiff, a citizen of Connecticut, brings this action against Rehtmeyer Design Co. ("RDC"), an Illinois corporation; Carol Rehtmeyer ("Rehtmeyer"), a resident of Illinois; All Things Equal, Inc. ("ATE"), a Florida corporation; and Eric Poses ("Poses"), who was a resident of Florida at the time the action was filed.[1] RDC has moved pursuant to Rule 12(b)(2) to dismiss the action for lack of personal jurisdiction, and all defendants have moved to dismiss the action for improper venue or, in the alternative, to transfer the action to the Northern District of Illinois ("Northern District"). *See* Defs.' Mot. To Dismiss or Transfer [doc. # 10]. For reasons set forth below, RDC's Rule 12(b)(2) motion is denied, defendants' Rule 12(b)(3) motion is denied, and defendants' motion to transfer is granted pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

### I. Background

The allegations of the complaint, which are assumed to be true for purposes of this ruling, establish the following facts. Plaintiff created a copyrighted game called "Who's The Wiseguy." *See* Compl. [doc. # 1] ¶¶ 9–12. He then contacted Rehtmeyer in Illinois to obtain information regarding game testing and evaluation services provided by RDC. *See id.* ¶ 13. In return, he received in Connecticut a package of information from RDC regarding its services and fees, including a "Disclosure and Confidentiality Agreement" form. *Id.* ¶ 14. Plaintiff mailed "Who's The Wiseguy?" to RDC in Illinois along with the requisite payment and completed Disclosure Agreement form. *See id.* ¶ 15.[2]

Clifford L. Tager, Danbury, CT, for Christopher W. Sutton, plaintiffs.

Louis M. Federici, Jr., Michele Lynne Daley, Parrett, Porto, Parese & Colwell, New Haven, CT, for Rehtmeyer Design Co, Carol Rehtmeyer, All Things Equal Inc, Eric Poses, defendants.

---

**1.** Poses has since moved to California. *See* Defs.' Reply Br. [doc. # 18] at 5 n. 5, 10.

**2.** Defendants have submitted a copy of a "Disclosure Agreement" claiming that it is the contract at issue. *See* Defs.' Mot. to Dismiss

or Transfer (Rehtmeyer Aff.) ¶¶ 6, 9, Ex. A (Disclosure Agreement); Defs.' Reply Br. at 3–4. Plaintiff has referred to that "Disclosure Agreement" as proof that he had a contractual relationship with RDC, *see* Pl.'s Opp'n [doc. # 13] at 3 (citing Defs.' Mot. to Dismiss or

48

Rehtmeyer, on behalf of RDC, evaluated the game and mailed a written report to the plaintiff in Connecticut stating that the game had no commercial viability. *See id.* ¶ 17. Relying on RDC's expertise, plaintiff did not commercialize the game. *See id.* ¶ 18.

Poses then became a client of RDC. *See id.* ¶ 23, Ex. A (Sutton Aff.) ¶¶ 36–37, 39. Shortly thereafter, Poses and ATE began to produce and distribute a game called "Loaded Questions." *See* Compl. ¶¶ 22, 24; Pl.'s Opp'n Ex. A (*Business Week Enterprise* Article dated 11/9/98). "Loaded Questions" is identical or substantially similar to "Who's The Wiseguy." *See* Compl. ¶ 21. RDC currently identifies "Loaded Questions" as one of its "successes." *See id.* Ex. A ¶ 36.

Plaintiff did not authorize any of the defendants to use any part of "Who's The Wiseguy." *See* Compl. ¶ 25. Without his consent, Rehtmeyer and RDC sold or otherwise shared "Who's The Wiseguy" with ATE and Poses, and all four worked together to bring "Loaded Questions" to market. *See id.* ¶¶ 25–27, 43, 46–47.

Based on the foregoing allegations, plaintiff claims that all the defendants have committed copyright infringement and violated the Connecticut Unfair Trade Practices Act. *See* Conn. Gen.Stat. § 42–110b ("CUTPA"). In addition, he claims that Rehtmeyer and RDC have violated the Disclosure Agreement and breached fiduciary obligations created by that agreement.

In support of the pending motions, Rehtmeyer states that RDC evaluates game concepts. If a game is unique and marketable, RDC seeks to represent the product and license it to the toy and game industry. *See* Defs.' Mot. to Dismiss or Transfer (Rehtmeyer Aff.) ¶ 4. RDC does not have an office in Connecticut and does not advertise its services here. *See id.* (Rehtmeyer Aff.) ¶¶ 3–4, 7. Upon receiv-

ing a game concept, evaluation fee, and signed Disclosure Agreement, RDC "hires independent product testers in Illinois to evaluate the inventor's concept ... and provide a written report" to RDC. *Id.* (Rehtmeyer Aff.) ¶ 6. RDC reviews the report, modifies it if necessary, makes a determination whether to undertake to represent the product, and prepares a final report that is sent to the inventor along with the inventor's original materials. *See id.*

Rehtmeyer claims that plaintiff's "game concept is very commonplace, and [RDC] has received and continues to receive many similar game concepts," *Id.* (Rehtmeyer Aff.) ¶ 13, such as the game concept submitted by Poses roughly one year after plaintiff's contact with RDC. *See id.* (Rehtmeyer Aff.) ¶ 14. RDC states that it chose not to represent either product because neither one was unique. *See id.* (Rehtmeyer Aff.) ¶¶ 10, 14.

Rehtmeyer states that "[a]ll of the witnesses who would testify as to the handling of both Sutton and Poses game concepts reside in Illinois." *Id.* (Rehtmeyer Aff.) ¶ 15. Defendants state that "the only place that Poses and [ATE] could have had access to [plaintiff's game] was in Illinois." *See* Defs.' Mot. to Dismiss or Transfer at 3. Poses claims that "all the witnesses, documents, and transactions" central to a resolution of the copyright infringement and related unfair trade practices claims "are in Illinois." *See id.* Ex. A (Poses Aff.) ¶ 4; *id.* (Rehtmeyer Aff.) ¶ 15 ("All activity with regards to [plaintiff's] claim occurred in Illinois."). This appears to include the sale of "Loaded Questions" in Illinois through the Toys 'R' Us chain. *See* Pl.'s Opp'n Ex. A (stating that Toys 'R' Us bought 20,000 copies of "Loaded Questions" for all its stores in 1998).

II. Discussion

 The issues of personal jurisdiction and venue presented by the defen-

Transfer (Rehtmeyer Aff.) ¶ 9), and the signature on his affidavit appears to be identical to the signature on the "Disclosure Agreement."

*See* Compl. Ex. A at 9; Defs.' Mot. to Dismiss or Transfer Ex. A (Disclosure Agreement).

dants' motions are somewhat complicated.[3] "However, the Court need not resolve them, since it has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in this district, if a transfer would be in the interest of justice." *Volk Corp. v. Art–Pak Clip Art Serv.*, 432 F.Supp. 1179, 1181 & nn. 4–5 (S.D.N.Y.1977); *see Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978) (adopting Judge Weinfeld's statement of the law in *Volk* ); *see also Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F.Supp. 346, 348 (S.D.N.Y. 1988) ("Therefore, where motions to dismiss for lack of personal jurisdiction and venue are joined with a motion to transfer, the transfer motion may be considered first.").

■ A case may be transferred to a district where it could have been brought "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a); *see* 28 U.S.C. § 1406(a) (allowing transfer "in the interest of justice" when venue is improper). The defendants as the moving parties have the burden of establishing that the case should be transferred. "Venue must be proper and the defendants must be amenable to process in the transferee forum. These requirements cannot be waived by the party seeking the transfer." *Alexander & Alexander*, 685 F.Supp. at 349–50.

A. Personal Jurisdiction and Venue in the Northern District of Illinois

■ The Northern District would have personal jurisdiction over the claims against RDC, an Illinois corporation, and Rehtmeyer, a resident of Illinois. The Northern District also is an appropriate venue for the copyright claim against those defendants. Venue is proper there with regard to the other claims against them because the contract between the plaintiff and RDC was formed, performed, and allegedly breached there, and "Loaded Questions" was offered for sale and sold there as well.

■ Turning to the claims against ATE and Poses, the Northern District would have specific personal jurisdiction over both defendants with regard to both the copyright and related unfair trade practices claims pursuant to the tortious act provision of the Illinois long arm statute. *See* 735 Ill. Comp. Stat. 5/2–209(a)(2) (West 2000).[4] Exercising personal juris-

3. This court appears to have personal jurisdiction over RDC with regard to the copyright and related CUTPA claims under Conn. Gen. Stat. § 33–929(f)(4), which authorizes the exercise of long-arm jurisdiction over a foreign corporation "on any cause of action arising ... out of tortious conduct in this state, whether arising out of repeated activity or single acts." Copyright infringement is deemed to take place at the point of consumer purchase and the complaint alleges that plaintiff purchased "Loaded Questions" at a Connecticut store. With regard to the other claims, this court may lack personal jurisdiction. Conn. Gen.Stat. § 33–929(f)(1) authorizes the exercise of long-arm jurisdiction over a foreign corporation on causes of action "arising out of any contract made in this state or to be performed in this state." However, it seems unlikely that the contract between plaintiff and RDC was formed in Connecticut because the "Disclosure Agreement" is in the form of an application, which could be accepted by RDC in Illinois. As for venue, this district is an appropriate venue for the copy-

right infringement claims pursuant to 28 U.S.C. § 1400(a) because the court has personal jurisdiction over all four defendants with regard to those claims. Venue is also proper here with regard to the related CUTPA claims. However, venue would appear to be improper in this district as to the remaining state law claims because no substantial part of the events giving rise to those claims took place here.

4. Alternatively, the Northern District would have personal jurisdiction against these defendants (both of whom support transfer) based on the provision of the Illinois long arm statute that allows a court to "exercise jurisdiction on any ... basis ... permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2–209(c) (West 2000). "Paragraph 2–209(c) is now coextensive with the due process requirements of the United States Constitution." *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir.1995). *See Animation Station, Ltd. v. Chi-*

diction over ATE and Poses in the Northern District would not offend due process because ATE and Poses allegedly worked with RDC and Rehtmeyer in Illinois to obtain information about plaintiff's copyrighted game, copy it, and ultimately sell at least one copy of "Loaded Questions" in that state. Venue as to the claims against ATE and Poses would be proper in the Northern District under § 1400(a) and § 1391(b)(2).

**B. Analysis of Factors Relating to Transfer**

 The single most important factor raised by the motion to transfer concerns nonparty witnesses. Defendants contend that there are at least two such witnesses who are vital to their defense—the "independent Illinois contract reviewer" hired by Rehtmeyer to review plaintiff's game, and the "independent Illinois based consultant" hired by Rehtmeyer to review Poses's game. Defs.' Mem. Supp. Dismissal or Transfer [doc. # 10] at 4; *see id.* at 3–5; Defs.' Mot. to Dismiss or Transfer (Rehtmeyer Aff.) ¶¶ 10, 14–15. According to defendants, the reviewer and consultant are expected to testify that neither game was unique, *see* Defs.' Mem. Supp. Dismissal or Transfer at 4; Defs.' Mot. to Dismiss or Transfer (Rehtmeyer Aff.) ¶¶ 10, 13–14, which is important because it would tend to show that the alleged similarity between the games is not the product of a conspiracy to infringe plaintiff's copyright. Both of these nonparty witnesses are beyond the subpoena power of this court and therefore could not be compelled to appear here.

In addition to this key factor, most of the activities at issue in the case took place in Illinois and the RDC employees who were involved in those activities reside there. *See* Defs.' Mot. to Dismiss or Transfer at 3–4; *id.* (Rehtmeyer Aff.) ¶¶ 7–15. RDC's employees are expected to testify that RDC decided against representing plaintiff's game, and also decided against representing the game submitted by Poses. They are also expected to testify that RDC returned both games to their respective owners with final reports. *See id.* (Rehtmeyer Aff.) ¶¶ 7–15; *see also* Defs.' Mem. Supp. Dismissal or Transfer at 4–5.

To offset the weight of the foregoing factors, which clearly favor transfer, plaintiff contends that if the case is sent to the Northern District he will have to hire local counsel there and take time off from work to travel there for court appearances. *See* Pl.'s Opp'n at 7. Even assuming plaintiff is correct, he has not shown that transferring the case to Illinois would be so costly or inconvenient for him that the case should remain here despite the factors discussed above that weigh heavily in favor of transfer.[5]

**III. Conclusion**

For the foregoing reasons, the motions to dismiss are denied and the motion to transfer to the Northern District of Illinois is granted.

So ordered.

*cago Bulls, LP,* 992 F.Supp. 382, 384 (S.D.N.Y.1998) (holding in a copyright infringement and unfair competition action that § 1404(a) transfer to the Northern District of Illinois was acceptable because personal jurisdiction over defendants existed there pursuant to 735 Ill. Comp. Stat. 5/2–209(c)).

**5.** "The widespread use of facsimile equipment and overnight mail and the courts' increasing use of telephone conferences in lieu of live conferences reduces the burden on nonresidents of litigating in a distant state. Even depositions can be done by telephone. If telephone depositions are objectionable for some reason, a [party] can be required to pay or at least share travel costs associated with depositions in appropriate cases. That leaves the burdens associated with the trial itself. But relatively few cases actually go to trial. Most cases are resolved before then." *Cody v. Ward,* 954 F.Supp. 43, 47 n. 9 (D.Conn.1997).